### NATIONAL OUTDOOR ADVERTISING BUREAU, Inc., v. HELVERING.
### HELVERING v. NATIONAL OUTDOOR ADVERTISING BUREAU, Inc.
#### Nos. 116–290.

Circuit Court of Appeals, Second Circuit.

May 10, 1937.

---

to Atty. Gen., for Commissioner of Internal Revenue.

Before MANTON, L. HAND, and CHASE, Circuit Judges.

L. HAND, Circuit Judge.

Both the Commissioner of Internal Revenue and the taxpayer have appealed from an order of the Board of Tax Appeals altogether expunging the deficiency in the taxpayer's income for the year 1929, and reducing it for 1930 to $1,196.41. There are three questions involved: (1) whether the taxpayer was exempt as a coöperative association within section 103 (12) of the Revenue Act of 1928 (26 U.S. C.A. § 103 note); (2), whether it should be allowed to deduct a depreciation charge for motor cars used by its salesman; (3), how far, if at all, it should be allowed under section 23 (a) of the same act (26 U. S.C.A. § 23 and note) to deduct as expenses of its business the cost of defending a suit in equity brought by the United States under the Anti-Trust laws (15 U.S.C.A. § 1 et seq.). The Board decided for the Commissioner on the first two questions, and for the taxpayer on the third; the defeated party in each case appealed.

The taxpayer, the "Bureau," is an incorporated association of advertising agents, entrusted by them with that part of their business which is done outdoors. The customers of the members, for whom its shares are held under a complicated agreement not necessary to describe, are merchants and manufacturers who wish to advertise. The "Bureau" procures space for the members upon billboards and the like on which to advertise their customers' wares; although the practice has varied, it now makes the contracts with the owners of this space, who collect their charges from it and it in turn reimburses itself from the appropriate member, withholding an agreed percentage for its expenses and as a fund against possible claims. From time to time it declares any surplus not needed as a dividend. Originally, a member was obliged to agree not to procure space except through the "Bureau," but that practice was abandoned after May 7, 1929, when a decree forbidding it was entered by consent, in a suit brought by the United States to forbid that and other practices. The "Bureau" contends that its business is "like" that of "farmers' or fruit-growers' * * * associations organized and operated on a coöperative

Edward F. Colladay and Wilton H. Wallace, both of Washington, D. C., for National Outdoor Advertising Bureau.

James W. Morris, Asst. Atty. Gen., and Sewall Key and John G. Remey, Sp. Assts.

basis, (a) for the purpose of marketing the products of members, and turning back to them the proceeds of sales, less the necessary marketing expenses"; and that it is therefore exempt under section 103(12) of the Revenue Act of 1928. That it is "organized and operated on a coöperative basis" is true enough, and its purpose is to "market" the services of its members; perhaps we should say that "services" are near enough to "products" to fall within the word. But unless we are to interpret the provision as a whole as including any kind of coöperative association, we cannot say that the "Bureau" is "like" the associations mentioned. Obviously, Congress did not mean to exempt all marketing or buying coöperative associations; it would not have limited its intent so specifically, and we need not consider whether the exemption, if so construed, is unfairly discriminatory. The Seventh and Ninth Circuits have denied the exemption to corporations no further removed from farmers than the "Bureau," and it seems to us that the point ·is really ·not debatable. Garden Homes v. Commissioner, 64 F.(2d) 593, 596 (C.C.A. 7); Sunset Scavenger Co. v. Commissioner, 84 F.(2d) 453, 455 (C.C.A.9).

The second point is the disallowance of depreciation of motor cars in which the "Bureau's" agents travel the country on its business. That business is to find space suitable for the displays of its members' customers and obviously that requires their agents to acquaint themselves with whatever billboards and the like are available and likely to attract public attention. They visit nearly twenty thousand cities and villages in the United States and Canada on their rounds, and this wears out their cars. The question is whether when the cars so used are exchanged for new cars and an allowance given, the depreciation by which this allowance is calculated shall be treated as a "loss" within section 112(a) of the Revenue Act of 1928 (26 U.S.C.A. § 112 and note). Subdivision (b) (1) of section 112 of the act (26 U.S.C.A. § 112 and note) denies the deduction when the property exchanged has been "held for productive use," a clause within which the cars certainly fall. The words are not limited to uses resulting in a material product; they should include all uses essential to commerce or manufacture; that is, to the performance of services, as well as to the creation of material things. Thus, the "Bureau" fails as to both points of its appeal, and the order must be pro tanto affirmed.

The Commissioner's appeal arises because of a suit brought by the United States against the "Bureau," the General Outdoor Advertising Company and others under the Anti-Trust laws. The "Bureau" had made an agreement with the General Outdoor Advertising Company which the Attorney General thought unlawful in details which it is not necessary here to set out; his agents had gone over its books at length and negotiations went on between its attorneys and him for a number of months before a bill in equity was filed in the spring of 1928. The "Bureau" had agreed to a number of the Attorney General's suggestions, but some of the other parties stood out, and the suit was tried. During the trial all parties came to an agreement and a decree was entered in May, 1929, declaring unlawful the "Bureau's" contract with the General Outdoor Advertising Company and enjoining both parties in various particulars; but not finding that they had committed the acts so forbidden. The "Bureau" was not allowed to deduct its legal expenses during 1928 and 1929 incident to this defence as "ordinary and necessary" under section 23 (a), and the Board's reversal of this ruling is the subject of the Commissioner's appeal here. The Board, not without difference of opinion, thought that since there was no evidence of the commission of any criminal acts by the "Bureau," and since the decree was directed to acts in the future, the expenses had not been incurred in defence of unlawful practices, and that there was no reason why they should not be deducted. It is hard to see why the "Bureau" had been guilty of no unlawful conduct whatever in the face of that part of the decree which declared illegal the contract with the General Outdoor Advertising Company; but, as in our view other considerations control, we do not press that one. When the "Bureau" consented to the decree, it must be understood to have agreed to its general propriety, except as it did not especially provide to the contrary; and that propriety depended upon the likelihood that it might do what the decree forbad. We must assume therefore that the decree actually restrained it from what there was at least an appreciable probability that it might do.

It is well-settled indeed that the cost of defending an action at law is an ordi-

nary and necessary expense of conducting business and deductible as an expense. Kornhauser v. United States, 276 U.S. 145, 48 S.Ct. 219, 72 L.Ed. 505. But it is not true, as indeed the "Bureau" concedes, that the occasion of the expense is immaterial; that all sorts of expenses are deductible. Burroughs Bldg. Material Co. v. Commissioner, 47 F.(2d) 178 (C.C.A.2), is the first case, so far as we know, in which the question was raised, for Great Northern Ry. Co. v. Com'r, 40 F.(2d) 372 (C.C.A.8), although we somewhat depended upon it, concerned fines. The expenses before us had been incurred in the unsuccessful defence of a prosecution under a state law against fixing prices; the taxpayer and its president had pleaded guilty, and been fined and the attempted deductions included both the fines and the legal expenses. We rested our decision "on a refusal to sanction expenditures of such a character * * * on grounds of public policy"; that is, that even though they might be "ordinary" in the sense that they were not unusual, they could not be "necessary," since the law will not recognize the necessity of engaging in illegal courses in the conduct of a business. That decision we followed in Gould Paper Co. v. Commissioner, 72 F.(2d) 698, where the legal services were, first to defend the taxpayer's officers in a criminal prosecution in which they had pleaded nolo contendere; and second, to defend it in a suit like this, where it too had consented to a decree. It is true that that decree found that the defendants had committed some of the acts enjoined; but we think that this was immaterial. If it is never necessary to violate the law in managing a business, it cannot be necessary to resist a decree in equity forbidding violations, except in cases where an injunction is unjustified. There is indeed less to be said for spending money in that way than in defending a criminal prosecution, for the decree by hypothesis will do no more than forbid what the taxpayer ought not to do anyway. Moreover, when as here, the decree is entered in a suit by the United States, there would seem to be all the elements of an estoppel; and, that aside, the consent is an acknowledgment of the proximity of the danger, as we have already said. Foss v. Commissioner, 75 F.(2d) 326 (C.C.A.1), does not touch the question of a consent decree, it is true, but it is to the contrary of the doctrine of the two cases just mentioned; for we cannot see any distinction between the unsuccessful defence of a suit by a minority shareholder to enjoin the unlawful conduct of the taxpayer and a suit brought by the sovereign. Our difference with the First Circuit dates therefore from Burroughs Bldg. Material Co. v. Commissioner, supra, 47 F.(2d) 178. On the other hand cases like Commissioner v. Continental Screen Co., 58 F.(2d) 625 (C.C.A.6), are quite in accord with our views, for the taxpayer's resistance was there justified, and was "necessary" to the protection of his business.

This does not, however, mean that none of the expenses were deductible; probably the greater part of them were, though we have no means of apportioning the amount. The situation was that the "Bureau's" conduct was challenged by the Attorney General and that it agreed to abandon some part of it and to allow a decree to be entered to that effect. The expense of that negotiation it may not deduct, nor any expense involved in the preparation of a decree which should enjoin so much as was enjoined by its consent; the decree was no more than a reasonable assurance against the recurrence of anything unlawful which had been done, and, as we have already indicated, against the commission of anything likely enough to be done to justify the present intervention of the court, a likelihood which the "Bureau" cannot now dispute. But in so far as it was put to charges rendered necessary by resisting what the Attorney General sought and the decree did not contain, they were incurred in the successful defence of its rights, and fall within the accepted doctrine. The case must be remanded for the Board to make such an apportionment and to recompute the tax with it as a factor.

Order affirmed on the taxpayer's petition.

Order reversed on the Commissioner's petition and cause remanded.