**FAULK v. UNITED STATES.**

No. 13625.

United States Court of Appeals
Fifth Circuit.

July 18, 1952.

Ben F. Foster, R. G. Harris, Wm. Beuhler, San Antonio, Tex., for appellant.

John A. Ryan, Sp. Asst. to Atty. Gen., William M. Lytle, Washington, D. C., Holmes Baldridge, Asst. Atty. Gen., and Henry W. Moursund, U. S. Atty., and Joel W. Westbrook, Asst. U. S. Atty., San Antonio, Tex., for appellee.

Before HOLMES, RUSSELL, and RIVES, Circuit Judges.

RIVES, Circuit Judge.

This action was brought by the United States under Sections 3490, 3491, 3492 and 5438,[1] Revised Statutes, 31 U.S.C.A. §§ 231, 232, 233, against David Reynolds Faulk, doing business as Faulk Creamery, for an alleged agreement and conspiracy on the part of defendant in 1947 and 1948 to defraud the United States by supplying and delivering to the Army Air Force Base at Lackland Field, Texas, "recombined or reconstituted milk", in violation of defendant's contract with the United States for the delivery of "fresh milk" in accordance with Federal specifications, and for the presentation by defendant to the United States of claims for payment for delivery of fresh milk, when defendant knew such claims to be false and fraudulent.

Defendant, in answer, denied that he presented or caused to be presented false, fictitious or fraudulent vouchers or claims to the United States for payment, or that the United States suffered any damages as a result of his alleged breach of contract, and set up as affirmative defense to the suit a provision in the contracts described as Note I-1 of said Federal Specification C-M-381c, which reads as follows:

"I-1. Type II No. 2, pasteurized milk refers to the first quality pas-

---

1. Sec. 5438 (at the time of its incorporation in Sec. 3490) read in part as follows: "Every person who makes or causes to be made, or presents or causes to be presented, for payment or approval, to or by any person or officer in the civil, military, or naval service of the United States, any claim upon or against the Goverment of the United States, or any department or officer thereof, knowing such claim to be false, fictitious, or fraudulent, * * * or who enters into any agreement, combination, or conspiracy to defraud the Government of the United States * * * by obtaining or aiding to obtain the payment or allowance of any false or fraudulent claim * * * shall be imprisoned at hard labor for not less than one nor more than five years, or fined not less than one thousand nor more than five thousand dollars." 12 Stat. 696, Revised Statutes.

Sec. 3490 further provides for double damages and costs in favor of the United States for proven violations of the above sec.

teurized milk, other than certified, available in communities not formally operating under the United States Public Health Service Milk Ordinance and Code. In some communities, this milk is referred to as 'Approved', 'Selected', 'Inspected', 'Guaranteed', or 'Special' pasteurized milk."

Defendant alleged in substance that the above quoted provision was a part of the contracts and in full force and effect during the period in dispute; that Lackland Air Base was a part of the community of the city of San Antonio, Texas which city was not formally operating under the United States Public Health Service Milk Ordinance and Code, and that the milk delivered and known as "recombined or reconstituted milk" was actually the "first quality pasteurized milk, other than certified, available" in such community.

The case was tried to a jury and submitted by the trial court on fifteen special issues. Based upon the jury's answers the court found defendant liable to the United States in the amount of $2,000.00 for each of five vouchers submitted for payment, or a total of $10,000.00, together with $28,638.72, which latter sum represents double the amount of damages sustained by the United States as a result of defendant's violations.

Appellant sets forth in brief five specifications of error, in substance as follows: (1) that the court erred in construing the contracts involved and holding as a matter of law that they provided for the delivery by defendant of only "fresh milk", and not "recombined" or "reconstituted milk";

(2) that the court erred in refusing to give to the jury appellant's requested instruction No. Ten, which set forth the measure of damages as the difference, if any, between the value of the milk delivered and that contracted to be delivered; (3) that the court erred in permitting the jury to assess damages on a percentage basis; (4) that the court erred in rendering judgment against defendant for double damages based on the jury's estimate of the damages on a percentage basis, in that such a basis was unsupported by the evidence; and (5) that the court erred in overruling appellant's motion to amend the judgment because of an alleged error in computing the amount of damages assessed by the jury in response to the special issues.

 The contract between appellant and the United States called for the delivery of milk, *fresh*, Federal Specification No. C–M–381c, Type II, No. 2.[2] The monthly invoices submitted by appellant during the contract period involved certified that the milk delivered was in accordance with these specifications and was milk, fresh, pasteurized. The invoices show that appellant delivered 533,098 quarts of milk under the above certification for which he was paid a total of $95,463.20 in checks issued by the finance officer of the Lackland Air Base. The testimony further reveals that during the period immediately prior to October 1, 1947, appellant had a contract with the Air Force which called for the delivery of recombined or reconstituted milk, in accordance with other Federal specifications for this type of milk,[3] but that upon the

---

2. This specification as set out in the Federal Standard Stock Catalog Section IV (part 5) provides:

"E–26–Type II, No. 2, pasteurized milk. —Shall conform to the specification for Type II, No. 2 pasteurized milk as herein defined, with the exception that the bacterial plate count shall not exceed 30,000 and in addition thereto, to the specifications for the local, first quality, pasteurized milk as defined in the current requirements of the milk ordinances of the locality in which the point of delivery is geographically located, provided that these ordinances require the production of a higher quality milk than that specified for Type II, No. 2, etc."

3. There was introduced in evidence as a Government exhibit a Federal specification for recombined milk, which is of course immaterial here, except insofar as it shows that the Government also had minimum standards and specifications for recombined milk, as well as for the fresh milk for which it contracted with appellant. Webster's International Dictionary defines "Fresh" as "newly produced, gathered or made, hence not subjected to long storage or kept by some method of preservation, etc." It should also be noted that the City of San Antonio, in its Milk Ordinance, separately defines "Milk", as distinguished from "Reconstituted or recombined milk and cream," as follows:

termination of that contract period and the beginning of the period here involved, from October 1, 1947 to March 31, 1948, the new contracts specifically provided for the delivery of fresh milk in accordance with the above Federal specification for that milk heretofore quoted. Under such circumstances appellant's argument that he should have been permitted to prove that the kind of milk delivered was within the language of Note I–1 of the specification as "the first quality pasteurized milk * * * available" is not material, for the contracts are clear and unambiguous and expressly provided for the delivery of fresh milk, rather than recombined or reconstituted milk. The court, therefore, correctly held that the term "fresh milk" did not as a matter of law include the "reconstituted milk" delivered. See Moran v. Prather, 23 Wall. 492, 90 U.S. 492, 23 L.Ed. 121; Pagel v. Pumphrey, Tex.Civ. App., 204 S.W.2d 58; Tennant v. Buratti & Montandon, Tex.Civ.App., 215 S.W.2d 201, 202; Real Estate Title Ins. Co. v. District of Columbia, 82 U.S.App.D.C. 170, 161 F.2d 887; United Carbon Co. v. Monroe, D.C., 92 F.Supp. 460.

■ With regard to appellant's second specification of error, special requested instruction No. Ten reads as follows:

"Gentlemen of the Jury: In determining the amount of damages, if any, Plaintiff suffered by reason of an alleged breach of contract by Defendant, you are charged that the measure of damages is the difference, if any, between the value of the commodity delivered and that contracted to be delivered under the contract."

Manifestly the above instruction in this instance would have placed a premium on appellant's wrongdoing and fraud. Under it appellant would not have risked losing anything by his misconduct except the illegal profit to which he was never entitled anyway, while had he never been brought to account for his fraud he would have been free to enjoy his unlawful gains with impunity. There was no error in the trial court's refusal to give this instruction. Cf. Wicker v. Hoppock, 6 Wall. 94, 73 U.S. 94, 99, 18 L.Ed. 752.

■ With regard to the remaining specifications of error (3), (4) and (5), all relating to the alleged error in the assessment of damages on a percentage basis, Special Issues Nos. 13, 14 and 15 submitted by the court required the jury to find (1) what percentage of the total amount of milk delivered by appellant during the period from October 1, 1947, through March 31, 1948 was recombined milk and (2) what proportion of the recombined milk was not consumed by the troops. In response thereto the jury found that 15% of all of the milk delivered to the Lackland Air Base was not consumed by the troops because 70% thereof was recombined milk. This finding was fully supported by the testimony of Major Couch, the Lackland Air Base Veterinarian, Sgt. Herman Smith, the mess hall attendant, Major Sasmore, another Army veterinarian officer, Guy William McKay, a licensed pasteurizer employed by appellant during the period involved, and Col. Russel McNellis, Chief of Meat and Dairy Hygiene Branch, Veterinarian Division, Surgeon General's Office. The aggregate testimony of these witnesses for the Government reveals that from one-third to two-thirds of the milk delivered by appellant's dairy to the mess hall at Lackland Air Base was left in glasses on the

"(A) Milk.—Milk is hereby defined to be the lacteal secretion obtained by the complete milking of one or more healthy cows, including that obtained within fifteen (15) days before and five (5) days after calving, or such longer period as may be necessary to render the milk practically colostrum free; which contains not less than eight percent (8%) of milk solids not fat, and not less than three and one-quarter per cent (3-1/4%) of milk fat.

"(H) Reconstituted or recombined milk and cream.—Reconstituted or recombined milk is a product resulting from the recombining of milk constituents with water, and which complies with the standard for milk fat and solids not fat of milk as defined herein. Reconstituted or recombined cream is a product resulting from the combination of dried cream, butter, or butter fat with cream, milk, skimmed milk, or water."

tables in the mess hall by the troops; that the troops also left from one-third to two-thirds of the milk in the bottles; that recombined milk is not nearly as palatable or as tasty as fresh grade A milk, but has a chalky, sticky and "sweet condensed milk" taste; that the troops made numerous complaints each day concerning the taste of this milk, and would not drink the recombined milk as well as fresh milk. There is further testimony to the effect that appellant deliberately engaged in deception and a series of fraudulent practices in order to escape being detected in his fraud; that such practices consisted in mislabeling the milk bottles so as to show that they contained "Grade A" milk when in fact he knew they contained "recombined milk", placing a few bottles of fresh milk in the rear of his delivery truck each day in order to deceive the Army veterinarian officer whose duty it was to inspect the milk before consumption by the troops; preparing the recombined milk at night in order to deceive an inspector for the Air Force sent to the plant for inspection purposes, threatening some of his employees with physical violence if they exposed him, and finally delivering the recombined milk rather than the fresh milk called for by the contract and certifying in his claims that delivery was in accordance with specifications. Under such circumstances there is no merit whatever in appellant's contention that merely because the Government was unable to prove with absolute mathematical accuracy the amount of milk unconsumed by the troops it was not entitled to recover double damages under the statute. As the Supreme Court speaking through the late Chief Justice Stone held in the case of Bigelow v. RKO Radio Pictures, 327 U.S. 251, 264, 66 S.Ct. 574, 579, 90 L.Ed. 652:

"In such a case, even where the defendant by his own wrong has prevented a more precise computation, the jury may not render a verdict based on speculation or guesswork. But the jury may make a just and reasonable estimate of the damage based on relevant data, and render its verdict accordingly. In such circumstances 'juries are allowed to act upon probable and inferential as well as direct and positive proof.' * * * Any other rule would enable the wrongdoer to profit by his wrongdoing at the expense of his victim. It would be an inducement to make wrongdoing so effective and complete in every case as to preclude any recovery, by rendering the measure of damages uncertain. Failure to apply it would mean that the more grievous the wrong done, the less likelihood there would be of a recovery.

"The most elementary conceptions of justice and public policy require that the wrongdoer shall bear the risk of the uncertainty which his own wrong has created."

The judgment is affirmed.