**NATIONAL BRASS WORKS, Inc. v. COMMISSIONER OF INTERNAL REVENUE.**

No. 13161.

United States Court of Appeals
Ninth Circuit.

June 5, 1953.

Todd W. Johnson, Donald C. McGovern and Edward D. Robertson, Los Angeles, Cal., for petitioner.

H. Brian Holland, Asst. Atty. Gen., Ellis N. Slack, Lee A. Jackson, I. Henry Kutz and Hilbert P. Zarky, Sp. Assts. to the Atty. Gen., for respondent.

Before STEPHENS and POPE, Circuit Judges, and McCORMICK, District Judge.

STEPHENS, Circuit Judge.

In its income tax return for the year 1944, National Brass Works, Incorporated, petitioner herein, claimed and deducted from its gross income as an ordinary and necessary business expense[1] an amount equal to the sum paid the government on July 17, 1944, "in settlement of the [Office of Price Administration] Administrator's claim for treble damages on account of violations of ceiling prices for non-ferrous castings under [Revised Maximum Price Regulations] RMPR 125." The Commissioner of Internal Revenue disallowed the claim and determined a deficiency in petitioner's income tax for the year 1944 in the sum of $2,911.85. Petitioner applied for a redetermination of the deficiency and the Tax Court sustained the Commissioner upon the submitted stipulated facts. Petitioner then sought and obtained review in this court.

In the opinion filed by this court remanding the case for further proceedings,[2] we said that a payment to be held as an ordinary and necessary business expense must "not frustrate the purposes of a statute or violate public policy", must not be a "fine in a criminal case", and must not be a "forfeiture in a case where it has been proven that the forfeited article has been knowingly or carelessly permitted to be used for or toward an illegal purpose". We held that petitioner's payment was not a fine or forfeiture within the above definitions. And, since the law violated was "highly complex and difficult to comprehend", an expenditure incurred because of a proved violation of the Price Control Act, 50 U.S.C.A.Appendix, § 901 et seq., was not automatically precluded as a valid income tax deduction. Accordingly, the Tax Court was directed to allow the claim if, upon taking evidence, it determined that the overcharges had been "innocently and unintentionally made and not made through an unreasonable lack of care". As was indicated, the issue was resolved into a question of proof with the burden on the taxpayer-petitioner.

Upon remand, the Tax Court took evidence and made findings to the following effect: RMPR 125, dated January 27, 1943, reduced petitioner's maximum ceiling prices by one and one-half cents per pound for the castings involved herein, effective February 1, 1943. Petitioner's supplier was also required by the price directive to reduce its prices by one and one-half cents per pound. However, freight rates were simultaneously increased three quarters of a cent per pound, thus netting petitioner only a three-quarter cent reduction in the cost of its supplies. Petitioner took the position that it should be permitted to off-set the ordered price reduction by the increased cost. Upon seeking the advice of its attorney, petitioner-taxpayer was advised to take up the matter with the O.P.A., and, pending the O.P.A.'s decision, to lower its prices one and one-half cents per pound for new orders while leaving unchanged the prices for orders already received. Petitioner reduced its prices by the full amount only on orders received from its single largest customer after March 1, 1943. The adjustment affected approximately one-third of petitioner's business. As a result of an investigation in the spring of 1944, the O.P.A. alleged that petitioner had violated RMPR 125 and threatened to sue for treble damages. Only then did petitioner reduce its prices as to all customers in conformity with the regulations. The claim of the O.P.A. was settled for $13,071.08, the exact amount of the overcharges.

The Tax Court concluded that petitioner had not acted "unintentionally" or "innocently", that, in fact, the overcharges had been thoroughly considered and acted upon

1. Title 26 U.S.C.A. (1946 Ed.), § 23(a) (1) (A).

2. National Brass Works, Inc. v. C.I.R., 9 Cir., 1950, 182 F.2d 526, 530.

with advice of counsel which was not entirely followed; that petitioner "purposely, deliberately and knowingly failed to comply with the price regulation". Accordingly, it held that the payment to the O.P.A. was not a necessary business expense. Petitioner now brings his cause once more before this court for review.

▇ Petitioner raises as its first specification of error the failure of the Tax Court "to find specifically whether there was or was not 'an intention to violate the Act' on petitioner's part, as required by the mandate of this Court." We hold that when the Tax Court found that petitioner had not acted unintentionally, and that it had acted "purposely, deliberately and knowingly", it had conformed to the rule laid down by this Court.

The petitioner contends that the Tax Court failed "to find specifically as to whether there was or was not a 'lack of due care to conform to the law' on petitioner's part, as required by the mandate." In our former opinion we held that "[w]here the payment has been made in circumstances which are inconsistent with intention to violate the Act and inconsistent with a lack of due care to conform to the law it would be an ordinary and necessary expense. Allowance of the deduction in these circumstances could not frustrate the enforcement of the Act." National Brass Works, Inc., v. C.I.R., 9 Cir., 1950, 182 F.2d 526, 531. Since the Tax Court, as we have already pointed out, found that petitioner had intended to violate the Act, it follows that petitioner could not have exercised "due care to conform to the law".

▇ Petitioner says there is no evidence supporting the finding that petitioner intended to violate the Act. To begin with, petitioner did violate the Act in that it did not reduce its prices as directed by the Office of Price Administration. And we must keep in mind that it was petitioner's

burden to show that the violation was unintentional. Petitioner argues that simply because it charged one and one-half cents more than the ceiling price it does not necessarily follow that there was an intention to violate the Act. We agree; we remanded the case for the Tax Court to consider the possibility that the overcharges had been made unintentionally, through misunderstanding of a complicated statute, or otherwise. It will be noticed that there is no proof of confusion as to the meaning of the regulation under which petitioner knew it must act, rather, petitioner relies upon its belief that the regulation and the order under it worked an inequitable result as to the petitioner. But a claim of inequity cannot justify a violation of an order.[3] Taking the law into its own hands would frustrate the policies of the United States in its effort to prevent wartime inflation.[4]

The fact that petitioner acted on advice of counsel was considered by the Tax Court. The evidence shows that petitioner's attorney advised it to seek redress directly from the O.P.A. And, while its attorney further suggested that petitioner make a full reduction on all new business and no reduction on the price of business already on the books, there is no evidence that the attorney suggested that such an arrangement would be in full compliance with the law. The suggestion appears to have been made only as a business expedient which would make any net adjustment very small if and when the O.P.A. should give retroactive approval to petitioner's acts.

▇ The fact that petitioner offered to make restitution to its customers after the O.P.A. investigators has discovered the overcharges, is as consistent with the government's theory that petitioner sought to extricate itself from an unfavorable position as it is with petitioner's theory that

---

3. A taxpayer could by ignoring an O.P.A. regulation in effect grant itself a temporary injunction against the application of the order, a power denied even an Emergency Court of Appeals in price cases during the emergency of the home front fight against inflation during World War II. See Yakus v. United States, 1944, 321 U.S. 414, 428, 64 S.Ct. 660, 88 L.Ed. 834.

4. C.I.R. v. Heininger, 1943, 320 U.S. 467, 473, 64 S.Ct. 249, 88 L.Ed. 171.

such fact is evidence of its innocence. The Tax Court followed the government's theory. It is not our function to retry the case. Unless clear error appears, we cannot disturb a Tax Court's finding or conclusion.[5] We find no clear error here.

 It was shown that the O.P.A. settled its claim for treble damages upon receipt from petitioner of a check in the exact amount of the overpayments received by petitioner. At the time of the settlement the Price Stabilization Act permitted the Administrator to institute action within one year after the occurrence of a violation of the Act to recover

"* * * not more than three times the amount of the overcharge, or overcharges, upon which the action is based * * * *Provided, however,* That such amount shall be the amount of the overcharge or overcharges or $25, whichever is greater, if the defendant proves that the violation of the Regulation, order, or price schedule in question was neither wilfull nor the result of failure to take practicable precautions against the occurrence of the violation."[6]

Petitioner argues that the Administrator's satisfaction with the exact amount of the overcharge is conclusive proof that petitioner did not act wilfully nor without practicable precautions. Petitioner's argument is not supported by the statute. The Administrator is *empowered* to recover "not more than three times the amount of the overcharge". He is *not required* to collect treble damages, and may thus exercise his discretion. The proviso prohibiting treble damages in specified circumstances is undoubtedly entitled to consideration as a possible guide by which the Administrator was motivated; however, it is not conclusive. In any event, the proviso was considered by the Tax Court, and we cannot say that the Tax Court erred in concluding from all the evidence that petitioner failed to establish its innocence and due care.

Both parties cite Jerry Rossman Corp. v. C.I.R., 2 Cir., 1949, 175 F.2d 711, to support their respective positions. Rossman Corporation was a "converter" of "greige goods" which shrink or stretch in the process of dyeing, to an extent not determinable in advance. It *"unwittingly"* overcharged its customers" [emphasis ours] by accepting shrinkage figures given it by the "finishers" to whom it had sent the goods to be dyed and thus claiming larger shrinkage than the O.P.A. regulations allowed. Furthermore, Rossman Corporation voluntarily reported its overcharges to the O.P.A. as soon as the mistake was discovered. In our case, as we have seen, petitioner's overcharges were not unwittingly made.

The decision of the Tax Court is affirmed.

Affirmed.

---

5. See Title 26 U.S.C.A. § 1141(a); Gillette's Estate v. C.I.R., 9 Cir., 1950, 182 F.2d 1010, 1014; United States v. United States Gypsum Co., 1948, 333 U.S. 364, 394, 395, 68 S.Ct. 525, 92 L.Ed. 746.

6. § 205(e), Emergency Price Control Act of 1942, as amended June 30, 1944, § 108, 58 Stat. 632, 640, 50 U.S.C.A. Appendix (1942 ed.) 1950 Supp., § 925(e).