Julian **LENTIN**, Petitioner,

v.

**COMMISSIONER OF INTERNAL REVENUE**, Respondent.

**No. 11401.**

United States Court of Appeals
Seventh Circuit.

Oct. 14, 1955.

Henry H. Koven, Paul Homer, Howard R. Koven, Charles N. Salzman, Chicago, Ill., for petitioner.

H. Brian Holland, Asst. Atty. Gen., David O. Walter, Ellis N. Slack, Joseph F. Goetten, Attys., Dept. of Justice, Washington, D. C., for respondent.

Before DUFFY, Chief Judge, and MAJOR and SWAIM, Circuit Judges.

SWAIM, Circuit Judge.

The petitioner, Julian Lentin, seeks a review of the decision of the Tax Court of the United States, 23 T.C. 112, which held that petitioner was not entitled to the deduction of $34,985.94 which petitioner claimed in his income tax report for the year 1946 as an "ordinary and necessary" expense incurred in carrying on his business during that year.

The amount claimed was paid by the petitioner to satisfy his part of a judgment which was rendered against him in the United States District Court for the Northern District of Illinois, Eastern Division, in a civil action brought against him and another by the Price Administrator for having "knowingly and willfully" sold lumber at prices in excess of the maximum prices established pursuant to the Emergency Price Control Act of 1942, as amended, 56 Stat. 23 et seq., 50 U.S.C.A.Appendix § 925(e). The District Court in that action expressly found that the overcharges had been made knowingly and willfully and therefore fixed the amount of the judgment at twice the amount of the overcharges, as permitted by the Act only where the overcharges had been willfully made.

Prior to a hearing before the Tax Court, held in Chicago November 30, 1953, the parties stipulated that the entire record in the OPA case should be considered in evidence in the tax case. This stipulation recited the facts as to

the District Court action against petitioner and showed that the District Court expressly found that when such sales were made Lentin knew that they were over the maximum prices fixed by the OPA and that the sales were in violation of OPA regulations. By this stipulation the parties agreed that either party might introduce further evidence, but in the November 30, 1953, hearing before the Tax Court the parties presented no further evidence and agreed that the case had been fully "stipulated."

The Tax Court sustained the Commissioner of Internal Revenue in his denial of the petitioner's claim of a deduction for the amount of the judgment which the petitioner had paid. The Tax Court recognized that the principal issue before it was whether or not the petitioner's violations of the Price Control Act were willful, and held that it was not necessary for it to redetermine the question since "the District Court's decision, affirmed on appeal, is *res judicata*, as to the issue of petitioner's willful violation of the Price Control Act."

The petitioner here contends that the Tax Court committed error: (1) in holding that the determination of the District Court, that petitioner's violations of the Price Control Act were willful, was *res judicata* as to the issue of willfulness in the proceeding in the Tax Court; (2) in refusing to allow that amount of the judgment representing the overcharge as a proper deduction; and (3) in refusing to allow an amount of the judgment equal to cost of goods sold as a proper deduction.

We think that the Tax Court in this case properly applied the doctrine of collateral estoppel in determining the question of whether the petitioner had willfully charged overceiling prices in violation of the Price Control Act. There was before the Tax Court in this case the entire record of the action against the petitioner in the District Court, including all of the evidence and the express finding of the District Court that Lentin willfully and knowingly made sales at prices in excess of the maximum prices permitted by OPA regulations. This rec-

ord also included the judgment for twice the amount of the overcharges, which amount was authorized only upon the court's finding of willful and knowing violations by the petitioner.

The petitioner contends that neither the doctrine of *res judicata* nor of collateral estoppel could have been properly applied by the Tax Court in the instant case.

The distinction between *res judicata* and collateral estoppel was pointed out and discussed by the Supreme Court in Cromwell v. County of Sac, 94 U.S. 351, 24 L.Ed. 195. The Court there, after explaining the doctrine of *res judicata*, said, 94 U.S. at page 353, as to collateral estoppel: "But where the second action between the same parties is upon a different claim or demand, the judgment in the prior action operates as an estoppel only as to those matters in issue or points controverted, upon the determination of which the finding or verdict was rendered. In all cases, therefore, where it is sought to apply the estoppel of a judgment rendered upon one cause of action to matters arising in a suit upon a different cause of action, the inquiry must always be as to the point or question actually litigated and determined in the original action, not what might have been thus litigated and determined. Only upon such matters is the judgment conclusive in another action."

The courts have consistently recognized and applied the doctrine of collateral estoppel. Commissioner of Internal Revenue v. Sunnen, 333 U.S. 591, 595, 68 S.Ct. 715, 92 L.Ed. 898; Lawlor v. National Screen Service, 349 U.S. 322, 327, 75 S.Ct. 865; Lynch v. Commissioner of Internal Revenue, 7 Cir., 216 F.2d 574, 579.

In Lynch v. Commissioner of Internal Revenue, supra, this court discussed and applied the doctrine of collateral estoppel as that doctrine was explained in Commissioner v. Sunnen, supra. The most recent decision concerning the doctrine of collateral estoppel which has come to our attention is Lawlor v. National Screen Service, supra, which was announced by the Supreme Court June

6, 1955. In that decision the Court again recognized that the doctrine of *res judicata* applies where there is an attempt to retry the same cause of action, while collateral estoppel applies where the cause of action is not the same but there is an attempt to relitigate an issue which has theretofore been litigated between the same parties.

The petitioner insists that all of the cases cited by the Government on collateral estoppel involved two actions before the Tax Court and are therefore inapplicable in the instant case because here the first action was before the District Court. We have found no case which so limits the applicability of the doctrine of collateral estoppel, and we can think of no reason why such doctrine should be so limited.

The petitioner also contends that the nature of the Tax Court, as shown by the 1924 Act which created its predecessor, the Board of Tax Appeals, and designated it as an independent agency in the executive branch of the Government, precludes the Tax Court from determining facts on the doctrine of *res judicata* or collateral estoppel. The petitioner says that in that original Act the Board of Tax Appeals was designated as an independent agency in the executive branch of the Government; that this designation has been continued in subsequent laws; and that the Board of Tax Appeals and the Tax Court were given as their primary function the finding of facts in tax disputes. The petitioner admits, however, that the function of the Tax Court is of "an inherently judicial nature." Counsel for petitioner admits that he has found no decisions which expressly say that the Tax Court may not determine the facts in a case by the use of the doctrines of *res judicata* or collateral estoppel. Nor do we know of any reason why the Tax Court should relitigate the same action or the same issues which have theretofore been litigated before it or before any other court of competent jurisdiction by the same parties or by parties in privity with the original parties.

The petitioner in the instant case, to sustain his argument that the Tax Court was not permitted to resort to the doctrine of collateral estoppel to support its finding that he had willfully violated OPA regulations, also quotes the following language from the opinion in Commissioner of Internal Revenue v. Heininger, 320 U.S. 467, 475, 64 S.Ct. 249, 88 L.Ed. 171: "We hold therefore that the Board of Tax Appeals was not required to regard the administrative finding of guilt under 39 U.S.C. §§ 259 and 732 [39 U.S.C.A. §§ 259, 732] as a rigid criterion of the deductibility of respondent's litigation expenses." In that case, however, there was an administrative hearing held before the Solicitor of the Post Office Department and, there being some evidence which to the satisfaction of the Postmaster General indicated fraud, he issued fraud orders. Such an investigation and hearing are a far cry from the trial of the petitioner in the instant case in the United States District Court, a trial which resulted in a judgment that petitioner was guilty of willful violations of the Price Control Act.

■ There can be no real question as to the privity between the Price Administrator, who filed the action against the petitioner for violation of the Emergency Price Control Act, and the Commissioner of Internal Revenue, who disallowed the deduction claimed by the petitioner. As said by the Court in Sunshine Anthracite Coal Co. v. Adkins, 310 U.S. 381, 402–403, 60 S.Ct. 907, 917, 84 L.Ed. 1263: "There is privity between officers of the same government so that a judgment in a suit between a party and a representative of the United States is *res judicata* in relitigation of the same issue between that party and another officer of the government." See also United States v. Willard Tablet Co., 7 Cir., 141 F.2d 141, 143, 152 A.L.R. 1194.

The petitioner in this case relies strongly on certain language used by the court in Jerry Rossman Corp. v. Commissioner of Internal Revenue, 2 Cir., 175 F.2d 711, as supporting his contention that the Tax Court had the duty of independent judgment on the issue of whether or not the claimed deduction would frustrate public policy. In that case the court stated that some penalties are deductible

and some are not, and that in each case the court must decide *ad hoc* the question as to the deterrent effect of exacting the penalty and whether failure to exact such a penalty would frustrate the policy of the particular act.

In the Rossman case the petitioner was clearly not guilty of any willful violation of the OPA regulations. The petitioner there became aware that he had violated the applicable regulations issued by the Office of Price Administration. Before that Office had started any investigation concerning his business, the president of the petitioner, on learning of the violation, sought the advice of the OPA as to what his company should do, and was advised that the company should return the overcharges to its customers. That being impractical because of the large number of customers involved and because the petitioner's customers had passed the overcharges on to those to whom they had sold, it was decided and agreed that the payment of the gross amount of the overcharges should be to the United States. Since the taxpayer there was clearly not guilty of willful violation of OPA regulations, the refusal to allow a deduction of the amount paid to the Government for the overcharges would not deter others from willfully violating the Act, nor would the allowance of the deduction encourage others to willfully violate the Act. The court there properly held that the amount paid by the petitioner should have been allowed as a tax deduction.

In the instant case, however, the Tax Court, by the agreement of the parties, had before it for its consideration as evidence the entire record in the OPA case. In its opinion the Tax Court recited the finding of the District Court that sales of lumber by the petitioner "were knowingly and willfully made by him and were known by him at the time to be in violation of the applicable regulations." The Tax Court then stated that where payments were made by a taxpayer pursuant to judicial determination that the taxpayer had been guilty of willful violations of the Emergency Price Control Act, such payments were not deductible from the taxpayer's gross income; that the disallowance of such deductions was "grounded on the principle that their allowance would frustrate clearly defined public policy." The Tax Court cited several authorities as sustaining this holding. We think that under the facts before that court its decision on this point was correct. National Brass Works, Inc. v. Commissioner of Internal Revenue, 9 Cir., 205 F.2d 104.

The petitioner next argues that he is at least entitled to a deduction for the actual amount of the overcharges. On this point the petitioner again relies on some of the statements made by Judge Hand in Jerry Rossman Corp. v. Commissioner, supra. But, as we pointed out above, Judge Hand was there dealing with violations of the OPA regulations which were innocently made by the taxpayer and therefore, were not knowingly and willfully made as in the instant case. Here the evidence clearly showed, and the District Court so found, that the sales by the petitioner at prices in excess of the maximum prices "were knowingly and willfully made by him and were known by him at the time to be in violation of the applicable regulations." It therefore seems clear that under the facts here the entire amount which petitioner was required to pay in satisfaction of the District Court judgment must be considered, as the Tax Court held, a penalty which could not be mitigated by the allowance of a deduction without frustrating the policy of the Emergency Price Control Act.

The petitioner here argues at length that the doctrine of collateral estoppel cannot be applied where the burden of proof in two actions is on different parties. The petitioner says that in the OPA case he had the burden of proof to show that he was not guilty of willful violations of the OPA regulations, but that in the case before the Tax Court the burden of proof shifted to the Commissioner. We cannot agree that there was such a shift in the burden of proof. In the case before the Tax Court the petitioner was claiming a deduction and

the burden was upon him to prove facts which would entitle him to the deduction. National Brass Works, Inc. v. Commissioner of Internal Revenue, 9 Cir., 182 F.2d 526, 530, 20 A.L.R.2d 590; George Schaefer & Sons, Inc., v. Commissioner, 2 Cir., 209 F.2d 440. In the latter case the court said, page 442: "Accordingly, we think the taxpayer, absent proof of such innocence, cannot deduct the settlement payment as a business expense, because to do so would be to frustrate the clear policy of the OPA statute."

Finally, the petitioner says that he actually realized a profit of less than $3,000.00 on the sales here in question, and that he is at least entitled to a deduction of $14,492.92 which he paid in excess of the ceiling price for the lumber in question—that this amount represents the cost of the goods sold. But the Tax Court properly held that since the petitioner had already included in his return as cost of goods sold the amount of $14,-492.92, representing his share of the overceiling price paid for the lumber, there was no legal basis for permitting a second credit or deduction for that amount.

The decision of the Tax Court is Affirmed.