DAVID R. FAULK AND WIFE, ALMA L. FAULK, PETITIONERS, *v.* COM-
MISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 55118.    Filed August 27, 1956.

*Ben F. Foster, Esq.,* and *Ralph G. Langley, Esq.,* for the petitioners.
*M. Clifton Maxwell, Esq.,* for the respondent.

OPINION.

JOHNSON, *Judge:* The Commissioner determined a deficiency in petitioners' income tax for 1952 in the amount of $14,876.67.

The issues for decision are whether petitioners are entitled to a deduction, as ordinary and necessary business expenses, of the following: (a) $28,638.72 paid by petitioners to the United States as double damages on a judgment rendered against petitioner David R. Faulk, arising out of a civil action brought by the Government for knowingly presenting false claims to the Government; (b) in the alternative, for one-half of the sum paid in satisfaction of such judgment; and (c) $3,442.52 [1] paid by petitioners for attorneys' fees and other expenses incurred in said litigation.

The petitioners, husband and wife, filed their joint return for 1952 with the director of internal revenue for the first Texas district, and therein claimed deduction of $28,638.72 as "Damages paid to U. S. Govt. July 23, 1952, as per Judgment in Civil Action No. 1372, U. S. Dist. Court, Western Dist. of Texas," and also $3,442.52 [1] attorneys' fees and other expenses incurred in said civil action. All of these claimed deductions were disallowed by the Commissioner in his notice of deficiency.

Substantially all facts herein have been stipulated and same are hereby so found.   From the stipulation of facts we quote in part as follows:

4. Petitioners have owned and operated a business known as Faulk Creamery located at San Antonio, Texas, for several years, and continued to operate such business during the year before the Court.

5. Prior to the institution of the civil action giving rise to the claimed deductions in issue before the Court, a criminal action involving the identical

---

[1] At the hearing petitioners reduced this amount by $100, which they concede was erroneously included.

matters and issues later presented to the Federal District Court, was filed against petitioner David R. Faulk under Title 18, Section 80 (now Section 1001) of the United States Code in the United States District Court for the Western District of Texas, alleging the presentment of false claims against the Government and in the trial of that criminal case, said David R. Faulk was acquitted by instructed verdict.

6. Thereafter, a civil action under Title 31, Section 231 of the United States Code was instituted by the United States against petitioner David R. Faulk doing business as Faulk Creamery. The complaint in that cause sought to recover a $2,000.00 penalty for each alleged false claim and double the amount of damages which the United States had sustained by reason thereof. A copy of such complaint and petitioner's answer is attached hereto as Exhibit 2–B and incorporated herein by reference.

7. At the close of the evidence the cause was submitted to the jury (the charge of the court and the verdict of the jury being attached hereto as Exhibit 3–C and incorporated herein by reference), and the court rendered judgment on said verdict awarding to the United States a judgment for:

    A. $28,638.72 as "double the amount of damage sustained by it as determined by the jury."

    B. "forfeiture in the sum of $2,000 for each of the false vouchers presented * * * or a total of $10,000."

    C. "All costs in this behalf incurred."

A copy of the judgment is attached hereto as Exhibit 4–D and incorporated herein by reference.

8. On appeal to the United States Court of Appeals for the Fifth Circuit said judgment was affirmed. [*Faulk* v. *United States*, 198 F. 2d 169]

9. All of the claimed deductions in dispute were paid by petitioners solely in respect of the trial judgment and appeal of the civil action referred to. The $10,000 forfeiture was not claimed as a deduction.

10. The attorneys' fees and expenses were all reasonable in amount.

Paragraph 5 of the stipulation was received in evidence over respondent's objection as to its materiality, and a transcript of the record on appeal, including the evidence adduced therein, of the civil action in question was admitted over petitioners' objection. Both were admitted on the ground that they might shed some light on the nature of the proceeding in which the judgment in question was recovered, for payment of which deduction is claimed.

Section 231 of Title 31 of the United States Code, under which the judgment in question was obtained, in effect provides that any person knowingly submitting false, fictitious, or fraudulent claims against the Government—

shall forfeit and pay to the United States the sum of $2,000, and, in addition, double the amount of damages which the United States may have sustained by reason of the doing or committing such act, together with the costs of suit; *and such forfeiture and damages shall be sued for in the same suit.* [Italics supplied.]

Petitioner had a contract with the Government for the delivery of fresh milk to Lackland Air Base near San Antonio, Texas, but delivered reconditioned and recombined milk. The jury found that of the 6 invoices submitted by petitioner to the Government, 5 were

knowingly false; hence the judgment for $10,000 as a "forfeiture." They also found that 70 per cent of the milk delivered by petitioner under his contract was recombined or reconditioned milk; and that 15 per cent of the milk delivered by petitioner was not consumed by the troops because it was recombined or reconditioned milk. The District Court found that double the amount of damage sustained by the United States, as determined by the jury, totaled $28,638.72, and rendered judgment accordingly.

The fraud here perpetrated by petitioner against the Government was in aggravated form. The Court of Appeals for the Fifth Circuit, in affirming the judgment of the District Court, said:

There is further testimony to the effect that appellant deliberately engaged in deception and a series of fraudulent practices in order to escape being detected in his fraud; that such practices consisted in mislabeling the milk bottles so as to show that they contained "Grade A" milk when in fact he knew they contained "recombined milk", placing a few bottles of fresh milk in the rear of his delivery truck each day in order to deceive the Army veterinarian officer whose duty it was to inspect the milk before consumption by the troops; preparing the recombined milk at night in order to deceive an inspector for the Air Force sent to the plant for inspection purposes, threatening some of his employees with physical violence if they exposed him, and finally delivering the recombined milk rather than the fresh milk called for by the contract and certifying in his claims that delivery was in accordance with specifications. * * * [See *Faulk* v. *United States*, *supra*, at page 173.]

Are petitioners entitled to deduct all, or, as alleged in their alternative plea, one-half of the $28,638.72 paid as double damages on the ground that such payment constituted "ordinary and necessary expenses paid in carrying on a trade or business" within the meaning of section 23 (a), Internal Revenue Code of 1939? We do not think that any part of such payment was deductible.

Petitioners concede that the $10,000 is not deductible, alleging it to be a "penalty," but contend that the "double damages" are deductible, on the ground that they are "compensatory in nature." We do not agree.

Under the law and the facts here, as affecting the pending issue, we do not think the two payments are divisible. Both payments were based upon the violation of a Federal statute contained in the same section of the Code, both were embraced in the same suit, as the law required, and both payments resulted from and were attributable to the same act of fraud perpetrated by the same taxpayer against his Government. We cannot believe that payment of damages for fraud committed by a taxpayer against his Government where, as here, the fraud was knowingly, deliberately, and personally perpetrated by the taxpayer, can be claimed by him in a tax proceeding as either ordinary or necessary business expense.

Sound public policy would forbid such a deduction. The allowance of the instant deduction would frustrate the sharply defined national policy proscribing the conduct of knowingly presenting false claims to the Government. Furthermore, on a factual basis we do not think that such expenses incurred under the circumstances and the facts of this case can be deemed either ordinary or necessary. Perpetration of fraud in the conduct of a business is neither ordinary nor necessary, and neither are the expenses resulting therefrom. "* * * the law will not recognize the necessity of engaging in illegal courses in the conduct of a business * * *." *National Outdoor Advertising Co.* v. *Helvering*, 89 F. 2d 881.

Under the facts here we think it immaterial whether the expenditures in question were "compensatory in nature" or not. Petitioners have cited no case sustaining their contention, while respondent quotes the following pertinent statement from *Standard Oil Co.* v. *Commissioner*, (C. A. 7) 129 F. 2d 363, affirming 43 B. T. A. 973:

we have found no case which permits a taxpayer to successfully claim a deduction based on a sum which said taxpayer has paid the Government by way of damages which arose from a fraud which the said taxpayer perpetrated upon the Government.

Evidently petitioners also "have found no case" so holding, since none is cited.

The two cases in their brief, which petitioners stress as supporting their contention on this issue, are distinguishable, differing from the instant case both as to issues and facts.

In the first, *Jerry Rossman Corporation* v. *Commissioner*, 175 F. 2d 711, the taxpayer was allowed deduction of a payment for price ceiling violation, since it involved an innocent violation of the O.P.A. law. There the taxpayer "had unwittingly overcharged its customers by claiming larger shrinkages than the regulation allowed," and upon discovering this, its president voluntarily reported same to the O.P.A. before investigation had been started by the O.P.A., and also the overcharges were not deliberately made. The court held under all the facts that the act of the taxpayer did not "frustrate the sharply defined policies" of the statute, and hence allowed the deduction. It also held that "in every case the question must be decided ad hoc."

In striking contrast are the facts in the instant case, where the acts of the taxpayer were knowingly, deliberately, and willfully perpetrated with fraudulent intent. This is not an ordinary suit for failure to comply with a contract and resultant damages in breach of such contract. The statute in question, unlike the O.P.A. law, is concerned only with those claims whose genesis is fraudulent and where such fraud is practiced against the Federal Government.

It is well established that payment of a judgment for willful violation of the O. P. A. law is not deductible. *Julian Lentin,* 23 T. C. 112, affd. (C. A. 7) 226 F. 2d 695, and numerous cases therein cited.

Petitioners' second case, *U. S. ex rel. Marcus* v. *Hess,* 317 U. S. 537, is not a tax case. It involves a judgment under section 231 of Title 31 of the United States Code, and is here cited for the proposition that the statute in question is not "penal." A careful reading of the case discloses that the Supreme Court stated only that the statute did not impose a "criminal" sanction, but it did not hold that the statute was not "penal."

In reply to this case respondent cites a later case, *United States* v. *Bausch & Lomb Optical Co.,* 131 F. 2d 545, affd. 320 U. S. 711, which did expressly hold that the statute in question is a "penal" statute.

Under the law and the facts of this case we hold that the attorneys' fees and other costs paid by petitioners in defense of the suit brought by the Government, wherein the judgment in question was obtained, are not deductible. The same reasons given by us in denying the deductibility of the $28,638.72 also apply to the attorneys' fees and expenses incident to the litigation incurred by petitioners.

On this issue petitioners rely on *Commissioner* v. *Heininger,* 320 U. S. 467. That case is clearly distinguishable from the instant case. There the litigation involved the very existence of petitioner's business. If the injunction there in question had been sustained, the taxpayer's business was "threatened with complete destruction." Here it does not appear that the existence of petitioners' business was in jeopardy by reason of the litigation.

Furthermore, the Supreme Court, in the *Heininger* case expressly held that if the deduction would frustrate national or State policies, then the expenses were not deductible, but held that whether such expenses would frustrate national or State policies depended upon "the peculiar circumstances of each case" and found that the facts there did not warrant such a holding. On the contrary, in the instant case we have affirmatively found from all the facts and circumstances and the record as a whole that sound public policy forbade such a deduction, and that the allowance of such deduction would frustrate sharply defined national policy proscribing the conduct of knowingly presenting false claims to the Government.

We agree with respondent that the facts of this case are sufficiently strong to invoke the doctrine announced in *National Brass Works, Inc.* v. *Commissioner,* (C. A. 9) 182 F. 2d 526, 530, on remand 16 T. C. 1051 (1951), affd. (C. A. 9) 205 F. 2d 104, viz:

It is true that neither the tax statute nor the treasury regulations condition deductibility upon the lawful character, either directly or remotely, of the expenditure made. * * * But, in the nature of things, public policy must narrow the field of allowable deductions which rest as they do upon legislative indulgence.