**Joe LYNCH, Petitioner,**

**v.**

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

**No. 11083.**

United States Court of Appeals
Seventh Circuit.

Nov. 4, 1954.

Martin R. Paulsen, George D. Spohn, Milwaukee, Wis., John G. Quale, Roy C. LaBudde, Milwaukee, Wis., of counsel, for petitioner.

H. Brian Holland, Asst. Atty. Gen., Melva M. Graney, Atty. Dept. of Justice, Washington, D. C., Ellis N. Slack, George F. Lynch, Sp. Assts. to the Atty. Gen., for respondent.

Before DUFFY, Chief Judge, and MAJOR and LINDLEY, Circuit Judges.

MAJOR, Circuit Judge.

The Commissioner of Internal Revenue (respondent) determined deficiencies in the income tax of petitioner, Joe Lynch (sometimes referred to as the taxpayer), for the years 1944 and 1945, in the amounts of $24,821.01 and $23,839.-04, respectively. Upon the taxpayer's petition, the Tax Court of the United States, on September 29, 1953, rendered its decision upholding the deficiencies thus determined. The controversy is here upon taxpayer's petition to review

and set aside the decision of the Tax Court.

The case involves the validity for tax purposes of a family partnership. For reasons subsequently disclosed, only a brief outline of the facts is required for the purpose of our decision. In 1937, and for several years previous thereto, the taxpayer was engaged as a retail merchant in men's clothes in the city of Milwaukee, Wisconsin. At that time he had a family consisting of his wife, three daughters, Marjorie, age 26, Helenjane, age 20, and Ruth, age 18, and a son, Joe, age 12. Marjorie and Helenjane were both married in 1940, and Ruth in 1942. For the most part, the daughters since their marriage have lived at places other than in the city of Milwaukee. In 1937, the net worth of petitioner's business was about $44,000. The net income from the business during that and previous years averaged from $4,000 to $6,000. In 1937, petitioner conceived the idea of dividing his estate with his children and for that purpose consulted with Mr. Carl B. Rix, an attorney. (We mention the name of the attorney because of his high standing as a lawyer and splendid reputation for integrity, professionally and otherwise.) Mr. Rix suggested to the taxpayer numerous ways in which the purpose could be achieved, including the formation of a partnership. As a result, a partnership agreement was prepared by Mr. Rix and signed by taxpayer and his three daughters on July 1, 1937. The agreement provided:

"1. The parties hereto have agreed to become copartners in business for the purpose of engaging in the sale of men's clothing, furnishings and hats in the City of Milwaukee under the firm name and style of Joe Lynch. The partnership shall begin as of July 1st, 1937, and shall continue for a period of fifteen years.

"2. To that purpose Joe Lynch has agreed to transfer, sell and convey to the partnership all his right, title and interest in and to the present business and the assets thereof, including the good-will and trade name thereof, now carried on by him at No. 230–W. Wisconsin Avenue, Milwaukee, subject to the assumption by the partnership of all liabilities of said business. The interest of the various parties in and to such partnership is as follows: Joe Lynch, one-fourth thereof; Marjorie Lynch, one-fourth; Helenjane Lynch, one-fourth; Ruth Lynch, one-fourth. The statement of the business now conducted by Joe Lynch as of July 1st, 1937, shall be the basis for the opening of the books of the partnership."

The agreement made provision in considerable detail for the conduct of the partnership business, the manner in which the books were to be kept, a distribution of one-fourth of the profits to each of the partners, and for numerous other matters common and incidental to a partnership business. Petitioner filed a Federal gift tax return for the year 1937 in which he reported gifts of one-fourth interest in the Joe Lynch business to each of his three daughters, and each of the daughters has for that and each succeeding year reported and paid income tax upon the profits of the business distributed to her.

Petitioner before the Tax Court relied upon the doctrine of collateral estoppel as a bar to the instant proceeding, which issue was decided adversely to petitioner. Thereupon, the Tax Court proceeded to hear evidence, make findings and decide the case on what is referred to as the merits, that is, that there was no valid partnership for tax purposes during the years 1944 and 1945, those for which deficiencies have been determined in the instant proceeding.

The taxpayer in his petition before the Tax Court alleged:

"The identical partnership and the identical issue was before the United States Board of Tax Appeals in the case of Joe Lynch, decided April 17, 1941, Docket No. 102149, reported in the 1941 Memorandum Deci-

sions published by Prentice-Hall in Paragraph 41,227. The Board of Tax Appeals' decision that the Joe Lynch partnership in question was valid, and that only one-fourth of the partnership's net income could be allocated to petitioner in accordance with the partnership agreement, constituted a finding of fact by the United States Board of Tax Appeals."

The Commissioner, as respondent, in answer to this allegation stated:

"Admits that the business of the alleged Joe Lynch partnership is and always has been the ownership, conduct and operation of a retail men's clothing store located in the City of Milwaukee, Wisconsin. Admits that the same partnership agreement and the same issue as to the year 1937 was before the Board of Tax Appeals in the case of Joe Lynch, Docket No. 102149, Memorandum Opinion April 17, 1941, but avers that the facts pertaining to the years 1944 and 1945 were not the same as 1937. Denies that the Board of Tax Appeals' decision as to the year 1937 that the Joe Lynch partnership was valid, and that only one-fourth of the partnership's net income could be allocated to petitioner in accordance with the partnership agreement, constitutes a finding of fact by the United States Board of Tax Appeals controlling as to the years 1944 and 1945."

On January 19, 1940, the Commissioner determined that the entire income of the Joe Lynch partnership business for the period from July 1 to December 31, 1937 was includible in taxpayer's income for the reason that the purported partnership was not recognizable for Federal income tax purposes. On taxpayer's petition, the Board of Tax Appeals, on April 17, 1941, entered its decision in favor of the taxpayer and adverse to the Commissioner. This decision was not appealed by the Commissioner and, therefore, became final.

In its 1941 decision, the Board stated:

"In the instant case no bad faith has been charged nor shown to have existed in connection with the organization of the partnership. The purpose and intention of the parties, as shown by the record, establishes that the agreement of July 1, 1937, was in fact a bona fide agreement between petitioner and his three daughters, whereby he was to give to each of them an interest in his business and the assets thereof; the four of them as co-partners were to carry on the men's clothing business for profit; the four of them were to have equal capital interests in the business at the start thereof on July 1, 1937; and, also, the four of them were to have equal distributive shares of the net profits derived from that business.

"The petitioner had the right to give each of his daughters an interest in his business and the partnership agreement was not rendered invalid because of the designation of petitioner as the manager thereafter having sole executive control of the business or because of the restriction of the rights of several of the partners to dispose of their capital interest in the partnership, except to petitioner and his son. Commissioner [of Internal Revenue] v. Olds [6 Cir.], 60 F.2d 252 (11 A. F. T. R. 741). The partnership agreement, the setting up of the capital accounts of each of the four partners on July 1, 1937, and the subsequent entries of debits and credits on their respective accounts on the partnership books sufficiently evidenced petitioner's completed gift of cash to his three daughters and their ownership of a one-fourth interest in the clothing business and property from which the income here in question was produced. The partnership agreement was executed by the parties thereto and a valid partnership between petitioner and his three

daughters was formed on July 1, 1937. [Citing cases.]"

The instant proceeding was heard by Judge C. P. LeMire, a Judge of the Tax Court, and on June 4, 1953, the division of that court to which the case had been assigned filed a memorandum opinion, in which it was stated:

"In this proceeding, although the taxable years are 1944 and 1945, the issue relating to taxation of the income of the 'Joe Lynch' business for those years involves the same gifts, the same partnership agreement, the same partnership, and the same parties as were involved in Docket No. 102149, Joe Lynch, supra. * * *

"Upon consideration of all of the evidence and circumstances we find that the parties had a real intention, in entering into the agreement of July 1, 1937, to join together as partners in carrying on the 'Joe Lynch' business. The respondent's determination is reversed."

On June 12, 1953, the Chief Judge of the Tax Court entered an order withdrawing the findings of fact and opinion lastly referred to. On September 23, 1953, findings of fact were made and an opinion rendered by the Tax Court, in which all of its members participated. Upon such findings and opinion, the decision now under review was predicated. After a detailed review of the facts and the law, the Tax Court concluded that "petitioner and his daughters did not in good faith and acting with a business purpose join or intend to join together in the conduct of the Joe Lynch business enterprise," and "that no valid partnership existed in the years 1944 and 1945 between petitioner and his three daughters and that the entire net income from such business in those years is taxable to petitioner."

The court in its opinion conceded that it had previously held "that the agreement involved herein constituted a valid partnership between petitioner and his three daughters." It held, however, that res judicata or collateral estoppel was

without application because the Supreme Court (decisions subsequently referred to) has "altered the legal concept of the facts essential for the determination of what constitutes a valid family partnership and has necessitated a broadening of the scope of inquiry in ascertaining whether or not such facts exist in a given case."

Five members of the Tax Court dissented, three of whom joined Judge LeMire (the Judge who tried the case) in an opinion sustaining the taxpayer's contention on the issue of res judicata or collateral estoppel. In such dissenting opinion, among other things it was stated:

"The identical issue of the validity of the partnership was before the Board of Tax Appeals in the proceeding of Joe Lynch, Docket No. 102149 (memorandum opinion, April 17, 1941), with respect to the year 1937, the first year of the agreement's operation. There has been no change in the controlling facts since that time. * * *

"We determined in the prior proceeding that there was a valid gift by the petitioner of capital interests in the business to his daughters and that the parties in good faith intended to carry on the business as equal partners. Since, under the rule of the Sunnen case [Commissioner of Internal Revenue v. Sunnen, 333 U. S. 591, 68 S.Ct. 715, 92 L.Ed. 898] we are not at liberty to reopen our inquiry as to those facts, the ultimate question of the validity of the partnership is likewise foreclosed. We should therefore sustain the petitioner on the res judicata issue."

█ Notwithstanding the Commissioner's assertion in answer to taxpayer's petition "that the facts pertaining to the years 1944 and 1945 were not the same as 1937," there is no showing of any change in the factual situation material to the issue as to whether the partnership was valid for tax purposes. As pointed out by the dissenting members of the Tax Court, "There has been no

change in the controlling facts since that time [1941 decision]." Nor do we understand that either the Tax Court's decision or the Commissioner's argument before this court is predicated upon a changed factual situation but that the decision and argument rest squarely upon what is asserted to be a change in the law. In any event, the instant proceeding involved the same parties, the same partnership agreement and a business operated in the same manner as it was in the beginning. In fact, the witnesses in the instant proceeding were the same as those in the 1941 proceeding, including petitioner's attorney, Mr. Rix. In this connection, it is interesting to note that petitioner in the instant proceeding offered to introduce in evidence a transcript of the former proceeding which, on objection of the Commissioner, was refused. The fact that the transcript of the former proceeding was available and denied admission on objection by the Commissioner dispels any thought or claim that might otherwise exist that there was any material difference in the evidentiary facts of the two proceedings.

That the Commissioner is hard pressed in the instant proceeding is shown by a statement made at the beginning of the hearing. Referring to the partnership agreement, he stated, "The sole motive is apparently to save income tax. I think the evidence will show that that was the sole motive." There is not a scintilla of evidence in support of the assertion that income tax was a motivating factor in the formation of the partnership. No such purpose was found by the Tax Court and neither is it relied upon by the Commissioner before this court. The Tax Court did state, "His attorney told him that his purpose could be accomplished through the formation of a partnership and advised petitioner that a partnership would reduce income tax." The latter part of this statement perhaps is literally true but, even so, it is calculated to mislead. The purpose of the partnership in its relation to income tax is of such importance as to justify quoting the testimony of Mr. Rix on that point. He stated,

"Naturally I discussed—I considered it myself and I discussed it with Mr. Lynch in forming my opinion as to what was the best plan which he did put up to me, best solution of what he desired. I think any attorney would have been derelict if he hadn't considered taxes. But we were in the depression and the taxes were not high and if you ask me now as to whether or not it was an important element I would say no, because it was no factor to make me consider the question of taxes as an important element in the situation that then existed."

Thus, we have a situation where the Board in 1941 expressly found and decided (see opinion previously quoted), (1) no bad faith was charged or shown to have existed in connection with the organization of the partnership; (2) purpose and intent of the parties was bona fide; (3) petitioner made a completed gift to each of his three daughters of a one-fourth interest in his business and the assets thereof; (4) they as copartners were to carry on the men's clothing business for profit; (5) the four of them acquired a capital interest in the business on July 1, 1937, and each was to have an equal distributive share of the net profits derived therefrom; (6) the interest thus acquired by the daughters produced the income sought to be taxed to petitioner, and (7) a valid partnership among petitioner and his three daughters was formed on July 1, 1937.

While it is not expressly mentioned it must be implicit in the findings made by the Board and the conclusion reached that the partnership was not formed either to avoid or to evade taxes. In any event, as already noted, there is no finding in the instant proceeding that such was the case, nothing more than a hint that such might have been a motivating factor.

The Commissioner in his brief poses the contested issue thus: "Whether the Tax Court was correct in holding that, because of the change in the legal concept of the facts essential for the determination of what constitutes a valid family partnership since its prior judgment

involving the same alleged partnership for the year 1937, the principle of *res judicata* or collateral estoppel did not apply to the instant proceeding." Stripped of its illusive verbiage, this issue, so we think, is reduced to the simple question as to whether the law as to what constitutes a valid partnership for tax purposes has been changed in the interim between the Board's former decision and that of the Tax Court in the instant case.

The issue presents only a question of law, which we conclude was decided erroneously by the Tax Court. The evidentiary facts are precisely the same in each of the two proceedings. It is for this reason that we think it unnecessary to relate in detail the inferences, ultimate findings and conclusions drawn by the Tax Court in the instant proceeding from the evidentiary facts. Any difference in the appraisement of the evidentiary circumstances results from the fact that such circumstances were appraised by one set of eyes in 1941, and by another in 1953. Such difference is not, in our judgment, attributable to a change in the law. The facts as found and issues adjudicated in 1941 are those which must be accepted in deciding whether petitioner is now entitled to the benefit of the legal doctrine of collateral estoppel.

█ Collateral estoppel is a refined version of the doctrine of *res judicata*. Both its purpose and application have been much discussed. In Commissioner of Internal Revenue v. Sunnen, 333 U.S. 591, 68 S.Ct. 715, 92 L.Ed. 898, the court defines the meaning to be attributed to *res judicata* and collateral estoppel. As to the latter doctrine, the court stated, 333 U.S. at page 598, 68 S.Ct. at page 719:

"But matters which were actually litigated and determined in the first proceeding cannot later be relitigated. Once a party has fought out a matter in litigation with the other party, he cannot later renew that duel. In this sense, *res judicata* is usually and more accurately referred to as estoppel by judgment, or collateral estoppel. * * * But if the later proceeding is concerned with a similar or unlike claim relating to a different tax year, the prior judgment acts as a collateral estoppel only as to those matters in the second proceeding which were actually presented and determined in the first suit. Collateral estoppel operates, in other words, to relieve the government and the taxpayer of 'redundant litigation of the identical question of the statute's application to the taxpayer's status.' Tait v. Western Md. R. Co., 289 U.S. 620, 624, 53 S. Ct. 706, 707, 77 L.Ed. 1405.

In the cited Tait case, the court, 289 U.S. at page 624, 53 S.Ct. at page 707, stated:

"The public policy upon which the rule [*res judicata*] is founded has been said to apply with equal force to the sovereign's demand and the claims of private citizens. Alteration of the law in this respect is a matter for the law-making body rather than the courts. [Citing case.] It cannot be supposed that Congress was oblivious of the scope of the doctrine, and in the absence of a clear declaration of such purpose, we will not infer from the annual nature of the exaction an intent to abolish the rule in this class of cases."

Notwithstanding this pronouncement in the Tait case, the court in Sunnen stated, 333 U.S. at page 600, 68 S.Ct. at page 720, that the "legal atmosphere" might be so altered between the two proceedings as to make the doctrine of estoppel inapplicable. Even so, however, the court stated, 333 U.S. at page 601, 68 S.Ct. at page 721:

"Of course, where a question of fact essential to the judgment is actually litigated and determined in the first tax proceeding, the parties are bound by that determination in a subsequent proceeding even though the cause of action is different."

In United States v. Munsingwear, Inc., 340 U.S. 36, 38, 71 S.Ct. 104, 106, 95 L. Ed. 36, the court quoted with approval from Southern Pacific R. Co. v. United States, 168 U.S. 1, 48–49, 18 S.Ct. 18, 42 L.Ed. 355, as follows:

"'* * * even if the second suit is for a different cause of action, the right, question or fact once so determined must, as between the same parties or their privies, be taken as conclusively established, so long as the judgment in the first suit remains unmodified.'"

In the still later case of Partmar Corp. v. Paramount Pictures Theatres Corp., 347 U.S. 89, 90–91, 74 S.Ct. 414, 416, the court stated:

"But a prior judgment between parties has been held to operate as an estoppel in a suit on a cause of action different from that forming the basis for the original suit 'only as to those matters in issue or points controverted, upon the determination of which the finding or verdict was rendered.' This latter aspect of res judicata is the doctrine of collateral estoppel by judgment, established as a procedure for carrying out the public policy of avoiding repetitious litigation."

The meaning of the phrase, "legal atmosphere," mentioned in Sunnen has not been amplified or explained in any subsequent court decision of which we are aware, although in Dr. Salsbury's Laboratories v. I. D. Russell Co. Laboratories, 8 Cir., 212 F.2d 414, 416, the court cited the Sunnen case for the proposition that a new cause of action was stated only "if there has been a decisive change in the law".

In any event, we come to the question as to whether there has been such a change in the law (or "legal atmosphere") either by statute or Supreme Court decision which makes the doctrine of estoppel inapplicable to the instant situation. Neither the Tax Court in its opinion nor the Commissioner in his brief in this court points out in what

respects the law relating to a valid partnership has been changed. Rather, they deal in generalities. The Tax Court in its opinion states:

"The decisions in the Supreme Court cases cited [referring to Commissioner of Internal Revenue v. Tower, 327 U.S. 280, 66 S.Ct. 532, 90 L.Ed. 670; Lusthaus v. Commissioner, 327 U.S. 293, 66 S.Ct. 539, 90 L. Ed. 679, and Commissioner of Internal Revenue v. Culbertson, 337 U. S. 733, 69 S.Ct. 1210, 93 L.Ed. 1659] have altered the legal concept of the facts essential for the determination of what constitutes a valid family partnership and has necessitated a broadening of the scope of inquiry in ascertaining whether or not such facts exist in a given case. This change in the law or the concept of the law has to a large extent rendered obsolete the legal concept upon which the Olds case [Commissioner of Internal Revenue v. Olds, 6 Cir., 60 F.2d 252] was decided and upon which our decision in Docket No. 102149, supra, was based."

 It will be noted that there is no assertion that there has been a change of the law as to what constitutes a valid partnership for tax purposes but only that there has been a change in the appraisement to be placed upon the facts, which means, so we think, nothing more than that the Supreme Court has admonished that greater vigilance be applied in determining whether a family partnership is bona fide, that is, for a business purpose, in contrast to a purpose to avoid taxes. In our view, the law as to what constitutes a valid partnership for tax purposes, family or otherwise, has not changed. The present test is no different from that announced in the Olds case, upon which the Board in its former opinion relied. Good faith on the part of the parties and the intention that a partnership be formed are set forth in the Olds case as the cardinal principles, citing London Assurance Corp. v. Drennen, 116 U.S. 461, 6 S.Ct. 442, 29 L.Ed. 688. In the Culbertson

case, supra, the Supreme Court announced the test thus, 337 U.S. at page 742, 69 S.Ct. at page 1214:

> "The question is not whether the services or capital contributed by a partner are of sufficient importance to meet some objective standard * * * but whether, considering all the facts * * * the parties in good faith and acting with a business purpose intended to join together in the present conduct of the enterprise. There is nothing new or particularly difficult about such a test. Triers of fact are constantly called upon to determine the intent with which a person acted."

In a footnote to the last quotation, the court stated, 337 U.S. at page 743, 69 S. Ct. at page 1215:

> "State of mind has always been determinative of the question whether a partnership has been formed as between the parties",

citing Drennen v. London Assurance Corp., 113 U.S. 51, 56, 5 S.Ct. 341, 28 L. Ed. 919, the same case cited and relied upon by the court in the Olds case. The Drennen case was twice before the Supreme Court, which accounts for the fact that it is cited in one instance as 113 U. S. 51, 5 S.Ct. 341, 28 L.Ed. 919, and in the other as 116 U.S. 461, 6 S.Ct. 442, 29 L.Ed. 688.

Even in the Tower case so greatly relied upon, the court stated, 327 U.S. at page 286, 66 S.Ct. at page 535:

> "When the existence of an alleged partnership arrangement is challenged by outsiders, the question arises whether the partners really and truly intended to join together for the purpose of carrying on business and sharing in the profits or losses or both. And their intention in this respect is a question of fact, to be determined from testimony disclosed by their 'agreement, considered as a whole, and by their conduct in execution of its provisions.'"

Drennen v. London Assurance Corp., 113 U.S. 51, 56, 5 S.Ct. 341, 28 L.Ed. 919, is cited in support of this rule, and immediately after the citation, the court in Tower states:

> "We see no reason why this general rule should not apply in tax cases where the government challenges the existence of a partnership for tax purposes."

This statement from Tower is reiterated by the Supreme Court in Culbertson, 337 U.S. at page 742, 69 S.Ct. at page 1214.

We disagree with the reasoning of the Tax Court that the test to be employed in determining the validity of a partnership as announced in the Olds case, upon which the previous decision of the Board was predicated, has been changed; in fact, it was expressly stated, as already noted, in the Culbertson case, "There is nothing new or particularly difficult about such a test." In this connection, the concurring opinion of Mr. Justice Frankfurter in the Culbertson case is of interest as well as important. In discussing the previous Tower decision, he stated, 337 U.S. at page 754, 69 S.Ct. at page 1220:

> "We should leave no doubt in the minds of the Tax Court, of the Courts of Appeals, of the Treasury and of the bar that the essential holding of the Tower case is that there is 'no reason' why the 'general rule' by which the existence of a partnership is determined 'should not apply in tax cases where the Government challenges the existence of a partnership for tax purposes.'"

No good purpose could be served in stating or discussing certain of the language contained in Tower and Lusthaus upon which the Commissioner relies as showing that the "legal atmosphere" with reference to family partnerships has been changed. If such was the case, it appears that such atmosphere was restored to normalcy by the Supreme Court in Culbertson. Moreover, a reading of numerous opinions by Courts of Appeals leads to the view that Tower and Lusthaus engendered more confusion than light. See Miller v. Commissioner, 6

Cir., 183 F.2d 246; Ginsburg v. Arnold, 185 F.2d 913, 916; Ardolina v. Commissioner, 3 Cir., 186 F.2d 176; Britt's Estate v. Commissioner, 5 Cir., 190 F.2d 946, 951; Alexander v. Commissioner, 5 Cir., 194 F.2d 921, 924; Seabrook v. Commissioner, 5 Cir., 196 F.2d 322, 326.

Marcus v. Commissioner, 5 Cir., 201 F.2d 850, an opinion by Chief Judge Hutcheson, voices some forthright criticism of the Commissioner for his failure to recognize the limitations which Culbertson places upon Tower and Lusthaus. The court, evidently referring to the member of the Tax Court who had decided the case, stated, 201 F.2d at page 852:

"It was, therefore, inevitable that, in her approach to the decision of the case, it was not the voice of Culbertson which guided her but the dead hand of Tower and Lusthaus, as commissioner and tax court, even after Culbertson, had persisted in misinterpreting and misapplying them."

Other Courts of Appeals, particularly the Second Circuit, have appraised Culbertson differently than the Commissioner would have us do. In Levin v. Commissioner, 199 F.2d 692, 694, the court stated:

"But the Culbertson case does not require active participation to make a person a partner for tax purposes. On the contrary, it made it clear that no one element is essential. The Supreme Court decided against the taxpayer because the only evidence of an intent to form a partnership was the expectation that the taxpayer's sons would, in the future, contribute their time and services to the partnership. That decision was reached not because an indispensable element was lacking, but because the one element present was not enough to justify a finding of intent to carry on a present partnership."

Again, the same court in Dyer v. Commissioner, 2 Cir., 211 F.2d 500, 503, stated:

"This court, after so reading [Culbertson], said, in Slifka v. Commissioner of Internal Revenue, 2 Cir., 182 F.2d 345, 346, that the test in cases such as this is 'whether an association, or joint venture, which satisfies all formal requirements and may be valid as between the parties, has been created to promote the conduct of their business in any other way than by reducing taxes. That this makes motive a test of tax liability is true enough; but it is equally true that it makes it so only when the reduction of taxes is the sole motive. That does not mean that "business" may not be so conducted as best to keep down taxes; but it does mean that keeping down taxes is not of itself "business".' "

■■ On the issue of collateral estoppel, we are not concerned with whether the Board in its 1941 decision found the facts correctly or incorrectly. The point is that the facts have not changed and that the findings as made at that time are binding and conclusive on the parties in a subsequent proceeding. The same is true of the law as applied to the facts in the previous proceeding unless in the meantime the law has changed, which we think it has not. In our view, the Tax Court should have sustained the taxpayer's position on the issue of collateral estoppel and as a consequence should have eliminated the deficiencies asserted by the Commissioner.

For the reasons thus stated, the decision of the Tax Court is

Reversed.