**CHICAGO GRAIN TRIMMERS ASSOCIATION, Inc., and New Amsterdam Casualty Company, Plaintiffs-Appellants,**

v.

**R. C. ENOS, Deputy Commissioner, Defendant-Appellee.**

**No. 15342.**

United States Court of Appeals Seventh Circuit.

July 13, 1966.

Rehearing Denied Oct. 6, 1966.

Mark A. Braun, Klohr, Braun & Lynch, Chicago, Ill., for plaintiffs-appellants.

Morton Hollander, Martin Jacobs, Dept. of Justice, Washington, D. C., John W. Douglas, Asst. Atty. Gen., Edward V. Hanrahan, U. S. Atty., Alan S. Rosenthal, Atty., Dept. of Justice, Washington, D. C., for defendant-appellee.

Before DUFFY, KNOCH and SWYGERT, Circuit Judges.

SWYGERT, Circuit Judge.

A determinative question presented in this appeal is whether the doctrine of res judicata should be applied to a claim for compensation death benefits filed under the provisions of the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. §§ 901–950, because of an admin-

istrative denial of a prior claim filed by the same dependents seeking similar relief.

This action was instituted under section 921 of the act to set aside an order of the deputy commissioner, Department of Labor, dated January 27, 1964, granting compensation death benefits to the widow and minor children of John J. Banks, deceased. The plaintiffs are the Chicago Grain Trimmers Association, the employer of Banks, and the New Amsterdam Casualty Company, its compensation insurance carrier. After considering cross-motions for summary judgment, the district court entered judgment affirming the decision of the deputy commissioner. The court held that the deputy commissioner's findings were supported by substantial evidence in the administrative record and that his decision and award were in accordance with law.

Three issues have been presented in this appeal: (1) whether substantial evidence supports the finding of the deputy commissioner that an injury to the deceased employee during the course of his employment resulted in his death; (2) whether the entry of a remittitur by the administratrix of the deceased employee's estate in a third-party wrongful death action without the employer's consent constitutes a "compromise" within the meaning of the act, barring a claim for death benefits; and (3) whether a prior decision of the deputy commissioner that an injury allegedly sustained by the employee in the course of his employment did not result in his death bars a subsequent claim that a different injury sustained by the employee while at work resulted in his fatality. Because we are convinced that the plaintiffs should prevail on the third issue, our discussion will be confined to that point.

At the time of his death on February 12, 1961, John J. Banks was an employee of the Chicago Grain Trimmers Association. He had worked as a grain trimmer since 1934, loading and unloading grain-carrying barges and vessels. In the late afternoon of January 30, 1961, after returning from work, Banks was standing at the head of the basement stairs in his home. Suddenly he pitched forward, falling eleven steps. His head struck the concrete floor, causing injuries that resulted in death thirteen days later.

The first claim for compensation benefits, filed on February 20, 1961 by the widow, Agnes Banks, for herself and her minor children, alleged that Banks sustained an accidental injury at work on January 26, 1961 which caused his fall at home on January 30, thereby incurring other injuries which resulted in death. At the hearing on this claim there was testimony that the deceased was struck by a cable on January 26 while working on a barge. Other witnesses, including several coworkers, testified that they did not see Banks suffer any accidental injury on that date and that during the subsequent three days he did not complain of illness. The deputy commissioner found that Banks died as a result of injuries incurred by the fall in his home, but that the evidence failed to establish that the fall was the consequence of an injury arising in the course of his employment. The claim for compensation was rejected.

On August 22, 1961, a second claim was filed by the widow in behalf of herself and her minor children alleging that Banks sustained an accidental injury on January 30, 1961 while working on a barge, which caused fatal injuries in his home on the same date. Shortly thereafter, the widow, as administratrix of her husband's estate, brought a wrongful death action in the federal district court against the Norris Grain Company.[1] She claimed that Norris was responsible

1. The complaint filed in the case at bar alleged that on September 21, 1961 at a pre-trial conference held by the deputy commissioner, counsel for the claimants requested that the hearing on the second claim be postponed pending disposition of the wrongful death action. In his answer, the defendant neither admitted nor denied the allegation.

for the breaking of a rope (which was stretched from a barge to a tower adjacent to one of its grain elevators) on January 30, 1961 which struck her husband on the head, eventually resulting in his death. The jury returned a verdict in her favor.[2]

Over the objection of the Grain Trimmers Association and its insurer, the deputy commissioner thereafter proceeded to entertain the second claim for compensation. Although jurisdiction to hear this application was challenged because of the prior finding that death had not resulted from employment, the deputy commissioner concluded that a hearing was justified because the claim concerned a different date of injury than that alleged previously. At this second hearing both parties presented testimony relating to the alleged occurrence of an accidental injury on January 30, 1961.[3] The claimants presented evidence that the rope, stretched from the barge to the tower broke and a "whole pile" fell on Banks' head. Witnesses for the employer denied knowledge of the rope breaking or of any complaint made by the deceased about the alleged incident. At the conclusion of the hearing the deputy commissioner found that the deceased suffered an injury while at work on January 30, 1961 producing an acute subdural hematoma, which caused him to fall down a flight of steps in his home two hours later. The deputy commissioner proceeded to make the compensation award challenged by the plaintiffs in the instant proceeding.

Turning to the question before us, both claims filed by the widow for herself and her minor children sought benefits under the compensation act for the death of the husband as the result of injuries sustained in his home. The only difference in the claims is that initially an accidental injury during employment on January 26 was asserted as being the cause of Banks' fall, whereas in the subsequent claim a predisposing accidental injury was alleged to have occurred on January 30, both in 1961. In the first hearing the evidence was directed to an alleged incident on January 26; in the second it was confined to the alleged incident on January 30. Although the claims presented different factual issues, these particular issues were intermediary to a determination of whether there was a causal relationship between the deceased's employment and the fatal fall in his home. The fall and the resulting injury and death were the ultimate occurrences upon which both asserted claims depended. This identity of ultimate issues constituted a single claim for compensation rather than two separate ones.

An analogous situation was present in Baltimore S.S. Co. v. Phillips, 274 U.S. 316, 47 S.Ct. 600, 71 L.Ed. 1069 (1927). There a seaman employed aboard a vessel was injured by the fall of a strongback used to support a portion of a hatch. A libel was filed in admiralty alleging that the injury was caused by negligence in failing to provide a safe place to work and to use reasonable care and by the unseaworthiness and the insufficiency of gear and tackle, and, in the alternative, if no negligence was established, for maintenance and cure. The federal district court found that the accident was not due to the negligence alleged, that is,

2. The verdict was in the amount of $30,000. The Norris Grain Company moved either to set aside the verdict or to grant a new trial. The district court indicated a new trial would be granted unless Mrs. Banks filed a remittitur in the amount of $11,000. The remittitur was filed, and a $19,000 judgment was entered and satisfied.

3. No mention was made of the alleged January 30 incident at the hearing on the first claim. The widow testified at the hearing on the second claim that in February 1961 (prior to the first hearing) her son told her of a rope-falling incident at work on January 30 and that it was discussed by the family and with her attorney. She stated that she did not mention the January 30th injury at the first hearing, however, because "it was forgotten about, and it wasn't until even after the other trials," that she remembered having been told of the injury.

the faulty design and construction of certain gear, but to the grossly negligent manner in which dunnage was removed from the hold. The court denied full indemnity by way of damages but awarded the cost of maintenance and cure. In a subsequent suit, the plaintiff sought recovery under the Jones Act alleging negligence of the ship's officers and employees in handling seaworthy gear. The plaintiff was awarded damages in the district court. The circuit court of appeals affirmed, but the Supreme Court reversed. In the course of its opinion, the Court first defined res judicata as follows:

> The effect of a judgment or decree as *res judicata* depends upon whether the second action or suit is upon the same or a different cause of action. If upon the same cause of action, the judgment or decree upon the merits in the first case is an absolute bar to the subsequent action or suit between the same parties or those in privity with them, not only in respect of every matter which was actually offered and received to sustain the demand, but also as to every ground of recovery which might have been presented. 274 U.S. at 319, 47 S.Ct. at 602.

Then, after referring to the opinion of the lower court that there was no identity of the causes of action because the grounds of negligence pleaded were "distinct and different in character," the Court declared:

> Upon principle, it is perfectly plain that the respondent suffered but one actionable wrong, and was entitled to but one recovery, whether his injury was due to one or the other of several distinct acts of alleged negligence, or to a combination of some or all of them. In either view, there would be but a single wrongful invasion of a single primary right of the plaintiff, namely, the right of bodily safety, whether the acts constituting such invasion were one or many, simple or complex.
>
> A cause of action does not consist of facts, but of the unlawful violation of a right which the facts show. The

number and variety of the facts alleged do not establish more than one cause of action so long as their result, whether they be considered severally or in combination, is the violation of but one right by a single legal wrong. The mere multiplication of grounds of negligence alleged as causing the same injury does not result in multiplying the causes of action. "The facts are merely the means, and not the end. They do not constitute the cause of action, but they show its existence by making the wrong appear. 'The *thing*, therefore, which in contemplation of law as its *cause*, becomes a ground for action, is not the group of *facts* alleged in the declaration, bill, or indictment, *but the result of these in a legal wrong, the existence of which, if true, they conclusively evince.*'" Ibid.

In the instant case the two events which were alleged to have occurred during the decedent's employment resulted in but one actionable ground for compensation benefits, the fatal fall in the home, even though those events were distinct as to time and character. If the decedent had been struck on the head by a cable and seconds later had suffered a similar injury by a falling rope and the occurrences whether singly or in combination had caused his fall, the analogy of these supposed events with the several and distinct acts of negligence referred to in Phillips would be more obvious. Accordingly, it was incumbent upon the claimants to assert in one claim all the incidents of employment which singly or in combination were alleged to have caused the fall in the home.

█ It would seem that this determination should call for an application of the doctrine of res judicata so as to bar the second claim. Although the defendant makes some effort to distinguish the issues because of the difference in the alleged predisposing injuries, his principal contention is that res judicata should not be applied because of the administrative nature of the proceeding. He maintains that the doctrine ordinarily has no application to decisions of administrative

agencies, citing among other cases, Churchill Tabernacle v. FCC, 81 U.S.App. D.C. 411, 160 F.2d 244 (1947), and Niagara Mohawk Power Corp. v. FPC, 91 U.S.App.D.C. 395, 202 F.2d 190 (1952), aff'd, 347 U.S. 239, 74 S.Ct. 487, 98 L.Ed. 666 (1954). As a corollary it is argued that this ought to be true particularly with respect to administrative actions in claims for workmen's compensation because policy considerations which may have influenced this type of legislation outweigh the need to put an end to litigation of the same issues between the same parties.[4]

■ There are many administrative decisions as to which res judicata does not apply, for reasons peculiar to the nature and subject matter of many administrative proceedings. In such cases the reasons underlying the doctrine are either not relevant or outweighed by other considerations, as an examination of the cases cited by the defendant will demonstrate. Churchill Tabernacle v. FCC, supra, for example, concerned the renewal of a license to operate a radio station. The court held that the Commission "is empowered to establish a new policy, and apply it to the renewal of an old license, despite the fact it is inconsistent with a previous decision. This follows from the statutory duty of the Commission to examine each application for renewal of license as an original proceeding and grant or refuse it in the public interest." 160 F.2d at 246. In Niagara Mohawk Power Corp. v. FPC, supra, the court refused to apply res judicata to an earlier decision by the Federal Power Commission (which the court characterized as

an order that "amounted to nothing more than a refusal to agree to the licensee's proposal that the license be amended") on the principal ground that the prior administrative action was unreviewable.

On the other hand, there are many cases holding that res judicata should be applied to administrative decisions when there are justifiable circumstances present. For example, it has frequently been held that the decisions of the Tax Court, an administrative agency, may be res judicata. Commissioner v. Sunnen, 333 U.S. 591, 68 S.Ct. 715, 92 L.Ed. 898 (1948); Fairmount Aluminum Co. v. Commissioner, 222 F.2d 622 (4th Cir. 1955); Lynch v. Commissioner, 216 F.2d 574 (7th Cir. 1954). A determination of the National Bituminous Commission that a producer's coal was "bituminous," which had the collateral effect of subjecting the producer to a certain tax, was held to be res judicata in a suit to enjoin the collection of the tax. Sunshine Anthracite Coal Co. v. Adkins, 310 U.S. 381, 60 S.Ct. 907, 84 L.Ed. 1263 (1940). The doctrine was applied to an Interstate Commerce Commission decision in Seatrain Lines, Inc. v. Pennsylvania R. R., 207 F.2d 255 (3d Cir. 1953). On this subject Professor Davis states, "The authorities that administrative determinations may be res judicata are much stronger and much more numerous than the authorities to the contrary."[5]

■■ The problem, however, is to determine when an administrative finding is res judicata and when it is not. A number of tests have been suggested and applied.[6] It seems that no single test has

---

4. The defendant asserts that Congress was so concerned with resulting inequities if full res judicata effect were given to compensation decisions under the act, that it amended section 22 of the statute, 33 U.S.C. § 922, to permit review of a compensation claim "because of a mistake in a determination of fact by the deputy commissioner" at any time prior to one year after its rejection. The defendant concedes that the provision has no direct application to this case because "the Deputy Commissioner was not aware of the January 30 injury until more than

'one year after the rejection' of the first claim." In any event, the section is inapplicable to this case because the claimants at no time disputed the findings of fact made by the deputy commissioner at the first hearing. Flamm v. Hughes, 329 F.2d 378, 380 (2d Cir. 1964).

5. 2 DAVIS, ADMINISTRATIVE LAW 554 (1958).

6. See Schopflocher, The Doctrine of Res Judicata in Administrative Law, Wis.L. Rev. 1–42, 198–235 (1942).

evolved. One approach is to inquire whether the particular administrative proceeding under examination was essentially "judicial" in nature rather than "administrative." Fairmount Aluminum Co. v. Commissioner, supra, 222 F.2d at 627. Although this approach has been criticized,[7] it occurs to us that it is the most logical one to apply in the instant case. The ultimate factual issues would be the same whether presented in a claim for compensation under the act or in a wrongful death action filed in a court of law. Therefore the administrative process in this case was essentially judicial. Again we quote Professor Davis: "That the doctrine of res judicata should be applied in full force to some administrative action seems clear beyond question. The doctrine is at its best as it applies to an adjudication of past facts, where the second proceeding involves the same claim or the same transaction."[8] Here an adjudication of past events was required and, as we have demonstrated, the claims as to ultimate issues were identical.

■ That a primary purpose of workmen's compensation legislation is to give greater protection and security to the employee and his dependents against injury or death occurring during employment and to remove the necessity of proving fault or negligence is not a sufficient reason to abrogate entirely the application of res judicata in compensation proceedings. Indeed the doctrine has been applied to the award as well as to the denial of claims under state workmen's compensation acts with respect to whether injury or death occurred during employment. Trupasso v. McKie Lighter Co., 79 F.Supp. 641 (D.Mass.1948); French v. Rishell, 40 Cal.2d 477, 254 P.2d 26 (1953); Hannah v. Oklahoma State Highway Comm'n, 172 Okl. 221, 45 P.2d 53 (1935); Doca v. Federal Stevedoring Co., 280 App.Div. 940, 116 N.Y.S.2d 25 (1952), aff'd 305 N.Y. 648, 112 N.E.2d 424 (1953).

In summary, we hold that the deputy commissioner should not have entertained the second claim because it was barred by res judicata.

The judgment of the district court is reversed.

---

7. Id. at 38.

8. 2 DAVIS, ADMINISTRATIVE LAW 559 (1958).