PUERTO RICO DISTILLING COMPANY, querellante y apelada, *v.* SOL LUIS DESCARTES, SECRETARIO DE HACIENDA, querellado y apelante.

Número 11321.

*Sometido:* 1 de noviembre de 1955. *Resuelto:* 8 de diciembre de 1955.

*Hon. Secretario de Justicia José Trías Monge* y *Arnaldo P. Cabrera, Procurador Auxiliar,* abogados del apelante; *McConnell & Valdés,* abogados de la apelada.

El Juez Asociado Señor Pérez Pimentel emitió la opinión del Tribunal.

El Secretario de Hacienda apela de una sentencia dictada por el Tribunal Superior, Sala de San Juan, anulando una deficiencia notificada a la Puerto Rico Distilling Company, en tanto en cuanto negó a dicha contribuyente la deducción para el año 1945 de las siguientes dos partidas: (*a*) $20,517.30 pagados por la contribuyente a la Oficina de la Administración de Precios, y (*b*) $3,000 pagados por ella en concepto de honorarios de abogado en relación con el procedimiento seguido ante dicha agencia federal (O.P.A.).

La sentencia apelada, en lo que respecta a estas dos partidas, se funda en los siguientes hechos que el tribunal sentenciador consideró probados:

"(2) En el año 1945 la demandante pagó a Estados Unidos, Oficina de Administración de Precios, la cantidad de $20,517.30 y pagó al Lcdo. Jorge Luis Córdova Díaz, quien la representó ante dicha Agencia, honorarios en la suma de $3,000.

"(3) Los hechos que dieron lugar al referido pago a Estados Unidos, Oficina de Administración de Precios, fueron los siguientes:

"(a) La demandante se dedica a producir alcohol en Puerto Rico. Durante los años de la guerra y debido a la escasez de alcohol en Estados Unidos, fabricantes de perfumes del continente enviaron a la demandante y a otras entidades en Puerto Rico aceites esenciales para que aquí se mezclaran con el alcohol, y se devolvieran a las firmas remitentes en forma de perfumes ya preparados. Dicha mezcla se hacía por la demandante en la proporción de 250 partes de alcohol a 190 grados prueba a 10,000 partes de esencia. Debido al alto valor que tenían dichos aceites esenciales; a que los mismos seguían siendo de la propiedad de los remitentes mientras se efectuaba el proceso de mezclarlos; que se trataba de operaciones que había que hacer con gran cuidado y precisión, corriendo la demandante un gran riesgo de tener que pagar por toda aquella esencia que se perdiera en el curso del proceso; y por entender que había envuelta la venta de un producto distinto, y de acuerdo con la interpretación que dió a los reglamentos de la Oficina de Administración de Precios, la demandante fijó originalmente un precio a dichos aceites ya mezclados de $2.25 por galón que era el precio que con la aparente aceptación de la Oficina de Administración de Precios cobraba otra entidad en Puerto Rico que realizaba parecidas operaciones.

"(b) La Oficina de Administración de Precios interpretó los reglamentos en forma distinta y entendiendo que se trataba de la venta única y exclusivamente del alcohol para lo cual existía un precio de 76 centavos, y de la prestación de un servicio—el de su mezcla con los aceites esenciales—para lo cual fijó un precio de 2 centavos por galón, determinó en primera instancia que la demandante sólo tenía derecho a cobrar la cantidad de 78 centavos en lugar de $2.25. Luego dicha Ofi-

cina de Administración de Precios fijó a la demandante el precio de $1.75 por galón.

"(c) Antes de que la Oficina de Administración de Precios fijara en definitiva el precio de $1.75 por galón y mientras éste estaba bajo consideración, el Administrador de dicha Oficina radicó en la Corte de Distrito de Estados Unidos para Puerto Rico una acción contra la aquí demandante, caso núm. 4434, alegando que ella había cobrado precios en exceso del precio máximo fijado por dicho Administrador de acuerdo con los reglamentos aplicables a este producto. Solicitó un *injunction* contra la demandante para que se abstuviera de seguir cobrando dichos precios y solicitó además el pago a Estados Unidos de América de daños en cantidad triple a lo cobrado en exceso.

"(d) Posteriormente las partes radicaron en dicho caso 4434 una estipulación exponiendo que el precio máximo aplicable al producto era el de $1.75 por galón; que la aquí demandante Puerto Rico Distilling Co. había pagado la suma de $20,517.30 al Tesoro de Estados Unidos cuya suma se aceptaba por el Administrador de Precios en pago total de todas las reclamaciones por daños relacionadas con la demanda, y se solicitó que la demanda se desestimara en cuanto a los daños. En vista de dicha estipulación la Corte de Distrito de Estados Unidos para Puerto Rico dictó la correspondiente sentencia desestimando la demanda en cuanto a la reclamación de daños.

"(e) La cantidad de $20,517.30 que en transacción pagara la demandante a Estados Unidos de América representó daños en forma sencilla, y fué establecido que la demandante no se había dedicado a prácticas de mercado negro, debiéndose su actuación a interpretación o aplicación indebida de la reglamentación de precios.

"(3) En los procedimientos anteriormente descritos y como consecuencia de su intervención a favor de la demandante que entre otras cosas obtuvo un aumento del precio máximo originalmente fijado de 78 centavos al de $1.75, la demandante satisfizo al Lcdo. Jorge Luis Córdova Díaz la cantidad de $3,000 por concepto de honorarios de abogado."

El apelante sostiene (1) que la corte a quo cometió error al conceder la deducción de las susodichas dos partidas, y (2) que dicha corte erró al no tomar en consideración la

declaración del inspector del Negociado de Contribución sobre Ingresos, señor Carlos Ruiz.

■■ La apelada pagó al gobierno de los Estados Unidos en la forma y circunstancias expuestas en las anteriores conclusiones de hecho la suma de $20,517.30. Dicho pago se efectuó a tenor con las disposiciones de la sec. 205 (e) de la Ley de Emergencia para el Control de Precios de 1942.(¹) Dicha sección autorizaba al consumidor, y en ciertos casos al Administrador de la Oficina de Administración de Precios (O.P.A.), a demandar al vendedor de artículos sujetos al control de precios por $50 o por tres veces la cantidad por la cual el sobreprecio pagado excediere el precio fijado en los reglamentos, cualquiera de estas cantidades que fuera mayor. El apelante conviene en que no todos los pagos hechos al Gobierno de los Estados Unidos a virtud de la sec. 205 (e), deben rechazarse como deducción bajo la Ley de Contribuciones sobre Ingresos y que el criterio para determinar si dichos pagos son o no son deducibles como gastos ordinarios y necesarios del negocio, (²) no es si tales pagos constituyen una multa o penalidad, sino más bien si los mismos vienen a frustrar las normas definidas en la Ley de Emergencia para el Control de Precios. También convenimos con el apelante en que al aplicar este criterio a casos específicos los tribunales han distinguido entre infracciones voluntarias (*willful violations*) e infracciones involuntarias (*innocent violations*) a los reglamentos de precios. Si las infracciones han sido voluntarias (*willfull*) o se han cometido por falta de precaución razonable (*reasonable precaution*), entonces el pago no es deducible; pero si por el contrario las infracciones han sido involuntarias (*innocent*), entonces el pago es deducible como un gasto ordinario y necesario del negocio. *Jerry Rossman Corp.* v.

(¹) 56 Stat. 34, 50 U.S.C.A. app., sec. 925 (e).

(²) Nuestra Ley de Contribuciones sobre Ingresos, en su sec. 32 (a) (1), según fué enmendada por la Ley núm. 159 de 13 de mayo de 1941 ((1) pág. 973), permitía a la contribuyente deducir de su ingreso bruto todos los gastos ordinarios y necesarios pagados o incurridos durante el año contributivo en la explotación de su negocio.

*Comm'r.*, 175 F.2d 711; *Comm'r.* v. *Pacific Mills*, 207 F.2d 177; *Utica Knitting Co.* v. *Shaughnessy*, 100 F. Supp. 245; *Hershey Creamery Co.* v. *United States*, 101 F. Supp. 877; *Bowles* v. *Hageal*, 64 F. Supp. 294; ([3]) *Farmers Creamery Co. of Fredericksburg*, 14 T.C. 879; *Henry Watterson Hotel Co.*, 15 T.C. 903; *Pacific Mills*, 17 T.C. 705.

Por estar claramente expuestos en la opinión del tribunal a quo no repetiremos los hechos aquí envueltos. Bastará recordar que la apelada interpretó los reglamentos de la O.P.A. en el sentido de que creía tener derecho a vender el producto a $2.25 por galón. Por el contrario la O.P.A. interpretó dichos reglamentos en forma distinta y fijó en primera instancia un precio de 78 centavos por galón para tal producto. Sin embargo, esta interpretación fué luego cambiada por la misma O.P.A. y entonces fijó un precio de $1.75 por galón. A base de este precio se transigió la acción por triple daño que la O.P.A. había iniciado contra la apelada. La prueba tiende a demostrar que esta transacción se hizo a base de que la contribuyente pagara una cantidad que representaba el pago simple del sobreprecio cobrado por la apelada, o sea, la diferencia entre $1.75 y $2.25 por galón. El Administrador de Precios aceptó dicho pago, renunciando a otros daños. La prueba revela además que una vez que la O.P.A. fijó definitivamente el precio máximo de $1.75 por galón la apelada no efectuó ventas en exceso de ese precio. Estas circunstancias, entre otras, nos mueven a resolver que la corte a quo no incurrió en error al decidir que la apelada no violó intencionalmente los reglamentos de precios máximos, ni que su actuación violara la política pública definida en la Ley de Emergencia para el Control de Precios de 1942. *Méndez & Co.* v. *Sec. de Hacienda*, 77 D.P.R. 924.

██ La aseveración del apelante en el sentido de que las violaciones imputadas a la apelada fueron intencionales por-

---

([3]) La doctrina de este caso respecto a la aplicabilidad de la norma de "precaución razonable" bajo los hechos allí envueltos, fué implícitamente rechazada por nosotros o no aplicada por normales a los hechos del ·caso de *Méndez & Co.* v. *Sec. de Hacienda*, 77 D.P.R. 924.

que mientras ésta facturaba a $1.75 por galón vendía a $2.25, guardando en caja la diferencia entre estas sumas, está fundada en una conjetura o inferencia del inspector Ruiz derivadas del hecho de que la apelada hizo un depósito en el banco de una suma parecida a la pagada a la O.P.A. como sobreprecio. La apelada presentó prueba para explicar el origen de ese depósito y esta prueba resultaba incompatible o tendía a destruir la inferencia que había hecho el inspector Ruiz. La corte a quo no venía obligada a aceptar como un hecho probado lo que sólo era una inferencia. La apreciación que de la prueba sobre este extremo hizo el juez sentenciador no es claramente errónea, y no debemos por tanto, dejarla sin efecto. *Wolff* v. *Hernández*, 76 D.P.R. 650.

Tampoco tenemos dudas de que la suma de $3,000 pagada por la contribuyente como honorarios de abogado constituye un gasto ordinario y necesario de su negocio. Basta recordar que la gestión del abogado culminó en este caso en la producción de mayores ingresos para la contribuyente. La corte a quo no erró al resolver que dicha suma era deducible. *Comm'r.* v. *Heininger*, 320 U.S. 467; *Cf. Lilly* v. *Comm'r.*, 343 U.S. 90; *Northern Trust Co.* v. *Campbell*, 211 F.2d 251; véase 66 Harv.L.Rev. 173–176; *Cf. Buscaglia, Tes.* v. *Tribunal Contribuciones*, 68 D.P.R. 858.

*La sentencia apelada será confirmada.*