San Juan Trading Company, Inc., demandante y recurrida, *v.* Secretario de Hacienda de Puerto Rico, demandado y recurrente.

Número: 12776    Resuelto: 19 de diciembre de 1962

*Arturo Estrella, Procurador General Interino,* y *Carlos G. Látimer, Procurador General Auxiliar,* abogados del recurrente; *L. E. Dubón, A. Torres Braschi* y *R. García Cintrón,* abogados de la recurrida.

Sala integrada por el Juez Asociado Señor Belaval como Presidente de Sala y los Jueces Asociados Señores Hernández Matos y Dávila.

El Juez Asociado Señor Belaval emitió la opinión del Tribunal.

El día 7 de agosto de 1946, Forrest A. Hornisher, accionista de la San Juan Trading Company, Inc., presentó en la Corte de Distrito de los Estados Unidos para el Distrito de Puerto Rico, una acción contra dicha corporación y sus accionistas, alegando, que en virtud de cierta conspiración para obtener el control de la corporación, la suscripción original de 100 acciones que hicieron los incorporadores se había aumentado por los demandados en 1,750 acciones, sin darle al demandante oportunidad de ejecutar su derecho a adquirir su parte proporcional de dichas acciones adicionales; que debido a dicha emisión adicional, Celso Suárez y Juan A. Franco, como directores dueños o personas con poder de disposición de las acciones así emitidas, lograron que la corporación distribuyera ciertos dividendos por acciones excluyendo al demandante con el propósito de reducir su parte proporcional en el dominio de la corporación, reducir su participación en los dividendos y el valor de sus acciones, causándole daños por $200,000; que al mismo tiempo, en violación de los derechos que como accionista le corresponden al demandante, la corporación le ha pagado a los demandados Celso Suárez y Juan A. Franco una parte de las ganancias netas habidas en los negocios y operaciones comerciales de la corporación que el demandante estima en no menos de $200,000 de los cuales ninguna parte ha sido pagada al demandante, a pesar, que los demandados Suárez y Franco sabían, que el demandante tenía derecho a una parte proporcional de dichas ganancias. El demandante solicitó el pago de la cantidad de $400,000 por daños y la anulación de todas las emisiones de acciones en las cuales no hubiera el demandante participado. Esta demanda fue contestada negando sustancialmente la conspiración y los daños reclamados. La única parte de esta acción que nos interesa para resolver este caso, es la estipulación de las partes y la sentencia que se dictó en la misma,

después de unir como parte demandante a Enrique León, otro accionista minoritario.

El día 27 de febrero de 1948 se radicó la estipulación de las partes, solicitando la desestimación de las dos últimas causas de pedir por daños y ganancias dejadas de percibir y que se declarara con lugar la primera causa de pedir dictándose sentencia contra la San Juan Trading Company únicamente por la cantidad de $70,000 por cualesquiera reclamaciones de cualquier clase, pasadas o presentes, que los demandantes pudieran tener contra la demandada San Juan Trading Company, sus oficiales, directores, o accionistas por no haberle reconocido a los demandantes su derecho a adquirir su parte proporcional en la emisión de nuevas acciones, en el entendido que la sentencia se consideraría pagada al pagarle la San Juan Trading Company la suma de $48,300 al demandante Enrique León y la suma de $21,700 al Lic. Orlando J. Antonsanti en concepto de honorarios de abogado. En virtud de dicha estipulación, la Corte de Distrito de los Estados Unidos para el Distrito de Puerto Rico, dictó sentencia el día 27 de febrero de 1948 en los mismos términos de la estipulación.

Como una consideración adicional de la estipulación acordada, el demandante Forrest A. Hornisher, dueño de un certificado de cuatro acciones y deudor a la corporación de la suma de $5,610.01 y el demandante Enrique León, dueño de cuatro certificados de ciento veinticinco acciones y deudor a la corporación de la cantidad de $10,973.66, suscribieron un documento endosando y entregando dichas acciones a la corporación en pago de sus respectivas deudas y la corporación estuvo conforme en saldar ambas deudas.

La forma convenida para el pago de los $70,000, en las cantidades antes expresadas, fue la siguiente: El 26 de febrero de 1948 se le pagó al Lic. Orlando J. Antonsanti la suma de $7,750.00 y a Enrique León la suma de $17,250.00 en dos cheques—exhibits 4 y 5 del demandante—; en esa misma fecha se le entregó al Lic. Orlando J. Antonsanti un pagaré

por la suma de $7,750.00 a vencer el 15 de abril de 1948, cuyo pagaré fue descontado en el Banco Popular de Puerto Rico el 27 de febrero de 1948 y pagado por la demandante al Banco el 15 de abril de 1948 y otro pagaré por la suma de $6,200 a vencer el 15 de junio de 1948, descontando en el Banco Popular de Puerto Rico el 27 de febrero de 1948 y pagado por la demandante al Banco el 15 de junio de 1948— exhibits IV, IV A, IV B, IV C del demandante—y se le entregó a Enrique León un pagaré por la suma de $17,250.00 a vencer el 15 de abril de 1948 y pagado por la demandante al propio Enrique León el 15 de abril de 1948 y otro pagaré por la suma de $13,800.00 a vencer el 15 de junio de 1948, que por haberse extraviado, después del procedimiento legal correspondiente, fue pagado por la demandante al Secretario del Tribunal Superior de Puerto Rico, Sala de San Juan el 26 de enero de 1949—exhibits V A, V B, V C del demandante. No hay duda que el pago de los $70,000.00 fue efectuado en su totalidad en la forma arriba descrita, y la San Juan Trading dedujo la partida total de los $70,000, como un gasto necesario y ordinario de su negocio, en su planilla de declaración de ingresos correspondiente al año 1948.

El Secretario de Hacienda no estuvo conforme con la alegación de la contribuyente que la partida de $70,000.00 constituyera un gasto ordinario y necesario ni una pérdida del negocio por entender que dichos $70,000.00 eran capitalizab'es, por haber sido el precio que pagó la corporación para adquirir las acciones de Hornisher y León, y en el supuesto que se tratara de un gasto ordinario y necesario, sólo podría deducir en la declaración correspondiente al año 1948, las cantidades pagadas en efectivo—$17,250 a León y $4,750 al Lic. Antonsanti—por ser las únicas realmente pagadas por la contribuyente durante su año contributivo que empezaba el 1ro. de abril de 1947 y terminaba el 31 de marzo de 1948, y ser su sistema de contabilidad uno de incurrido y devengado. El caso fue a pleito.

La ilustrada Sala sentenciadora, al dictar sentencia a favor de la contribuyente, concluyó: "Considerada la prueba relacionada con el desembolso de la cantidad de $70,000.00, cuya deducción está aquí en litigio y todas las circunstancias que rodean el mismo a la luz de la jurisprudencia y demás autoridades sobre el particular, concluimos que dicho desembolso llena los requisitos de un gasto ordinario y necesario del negocio de la contribuyente, y como tal cualifica para ser deducible. No solamente el pleito de Hornisher y León amenazaba seriamente los negocios de la corporación y su crédito con el ataque a la misma y a sus directores, sino que una posible sentencia en la cantidad reclamada de $400,000.00 con sus intereses ponía en peligro, a juzgar por la prueba en autos, la existencia misma de la corporación de tener que pagar, o ser ejecutada, por tal suma ... [P] De acuerdo con la evidencia, la contención del Secretario de Hacienda al efecto de que los $70,000 eran capitalizables porque se dieron en pago de la adquisición de las acciones de León y de Hornisher, no se sostiene. Resulta claro de la prueba que lo pagado por la corporación por dichas acciones fue la cantidad de $16,583.57 que Hornisher y León adeudaban ..." La ilustrada Sala sentenciadora llegó además a la conclusión que la contribuyente tenía derecho a deducir la totalidad de dicha suma en el año contributivo correspondiente al 1948.

En su recurso ante nos, el Secretario de Hacienda de Puerto Rico, señala dos errores: (1) "Erró el Tribunal Superior al determinar que los $70,000.00 adeudados por la demandante al señor León y al Lic. Antonsanti eran deducibles al computar su contribución sobre ingresos por ser gastos ordinarios y necesarios en el negocio o industria de la demandante; (2) Erró el Tribunal Superior, al determinar que el total de la deducción de $70,000.00 tomada por el contribuyente en el año 1948 era deducible en dicho año a pesar de que en tal año solamente fue pagada la cantidad de [sic] $23,000."

La ley aplicable en el 1948 era la sección 32 (a) (1) de la Ley de Contribuciones sobre Ingresos de 1924, que extractada en su parte pertinente, dispone: "Al computar el ingreso neto de una corporación o sociedad sujeta a la contribución impuesta por la sección 28, se admitirán como deducciones: (1) Todos los gastos ordinarios y necesarios pagados o incurridos durante el año contributivo en la explotación de cualquier industria o negocio ... *Disponiéndose,* que tales gastos ... no serán deducibles si no se pagan realmente durante el año contributivo, o si, bajo el sistema de contabilidad utilizado por la persona a quien tales pagos han de hacerse, el importe no hubiera sido incluido en su ingreso bruto durante el año contributivo a menos que hubiesen sido realmente pagados."

1—En cuanto al primer error, lo que en realidad de derecho, alega el Secretario de Hacienda, es que la partida de los $70,000.00 incluida entre las deducciones, en la planilla de declaración de ingresos correspondiente al año 1948, no constituye un gasto ordinario y necesario y no se produce dentro del curso normal del negocio, por tratarse del pago de una sentencia y gastos legales incurridos en un pleito incoado contra la corporación, sus directores y accionistas en el cual se alega una conspiración con el objeto de defraudar a unos accionistas minoritarios. Partiendo de lo que se probó, y no de las alegaciones, es muy difícil considerar la situación aquí descrita, como una en la cual, la contribuyente aceptara tal conspiración. Lo que la contribuyente aceptó fue, que el aumento del capital en acciones sin darle su participación proporcional a los accionistas minoritarios (*preemptive right*) pudo ocasionar una lesión en sus intereses individuales que tal vez resultara compensable, y que la alegación de la conspiración afectaba el buen nombre de la corporación y debía reconocérsele cierto interés de perturbación (*nuisance value*). Esta interpretación queda confirmada por el hecho de haber desistido los accionistas demandantes de

sus dos últimas causas de acción, en la estipulación radicada para dictar sentencia.

Ahora bien, partiendo del supuesto, que en realidad de verdad, hubiera mediado cierta ilegalidad en las actuaciones de la corporación, todavía el pago de la sentencia o los gastos legales incurridos, o ambos, constituirían un gasto ordinario y necesario: *Buscaglia, Tes.* v. *Tribunal de Contribuciones*, 68 D.P.R. 858 (Snyder) (1948), cita precisa a la pág. 864; *Méndez & Co.* v. *Secretario de Hacienda*, 77 D.P.R. 924 (Marrero) (1955), cita precisa a la pág. 928 et seq.; *P. R. Distilling Co.* v. *Secretario de Hacieda*, 78 D.P.R. 826 (Pérez Pimentel) (1955), cita precisa a la pág. 830 et seq. También lo serían ante una alegación de fraude para obtener ventaja de los accionistas minoritarios la cual resultaba lesiva al buen nombre de la corporación: *Lomas & Mettleton Co.* v. *United States*, 79 F. Supp. 886 (Hincks) (1948), cita precisa a las págs. 896–897; *International Shoe Co.* v. *Commissioner of Internal Revenue*, 38 BTA 81 (Smith) (1938), cita precisa a las págs. 88 y 95–96; *North American Investment Co.* v. *Commissioner of Internal Revenue*, 24 BTA 419 (Trammell) (1931), cita precisa a la pág. 420.

El Secretario de Hacienda descansa, fundamentalmente en el caso de *Hales-Mullaly* v. *Commissioner of Internal Revenue*, 131 F.2d 509 (Bratton) (1942), cita precisa a las págs. 511–512, el cual resuelve en síntesis que cuando una conspiración para defraudar a ciertos empleados de una corporación anterior, obliga a la nueva corporación formada por ciertos familiares del principal accionista de la corporación anterior, a defenderse del litigio entablado por los empleados de la corporación anterior, los gastos de dicho litigio y los honorarios de abogado no pueden reclamarse por la nueva corporación formada, como un gasto ordinario y necesario dentro del curso normal del negocio. Como se ve, los hechos no corresponden con los de este caso, en el cual, el litigio es directamente contra la corporación, sus directores

y accionistas y dentro del curso normal del negocio. La contribuyente nos llama la atención hacia el escaso valor doctrinal que hoy tiene dicho caso y nos refiere a la opinión disidente del Juez Bruce en el caso de *James E. Caldwell & Co.* v. *Commissioner of Internal Revenue*, 24 TC 597 (Pierce), cita precisa a la pág. 620, cuya opinión disidente se convierte en opinión de mayoría al ser revisado el caso por el Sexto Circuito: *Caldwell & Company* v. *Comissioner of Internal Revenue*, 234 F.2d 660 (*Per Curiam*) (1956), cita precisa a la pág. 661; véase además *Kanne* v. *American Factors*, 190 F.2d 155 (Denman) (1951), cita precisa nota 2 de la pág. 160. ■

La conclusión de la ilustrada Sala sentenciadora, en el sentido, que tanto el pago de la sentencia como el de los honorarios de abogado incurridos, resultan deducibles como gastos ordinarios y necesarios, en el curso normal del negocio, cuando ante una alegación de conspiración o fraude, el contribuyente decide transigir el litigio en evitación de la pérdida o el desprestigio que tal alegación pueda ocasionar al negocio, resulta enteramente correcta.

2—En cuanto a la deducción de la totalidad de la partida durante el año 1948, el Secretario de Hacienda alega que sólo la cantidad de $25,000.00, representada por los dos cheques, a favor de León y el Lic. Antonsanti podría deducirse en el 1948 por ser la cantidad realmente pagada, mas no la cantidad de los $5,000.00, representada por los pagarés a favor de los mismos, porque su pago no se efectuó, dentro del año contributivo 1948. Nos llama la atención sobre la diferencia que existe entre la Sec. 24(c) de la Ley Federal de Contribuciones sobre Ingresos y la sección 32(a)(1) de nuestra Ley de Contribuciones sobre Ingresos de 1924, según lo hicimos notar en el caso de *Clínica Juliá* v. *Sec. de Hacienda*, 76 D.P.R. 509 (Ortiz) (1954), cita precisa a la pág. 524, al resolver, en parte, que: "La ley federal exige que los gastos hayan sido pagados. Nuestra ley va más lejos y exige

específicamente que los gastos hayan sido pagados realmente. Tal adición demuestra claramente que fue la intención de nuestro legislador el requerir el pago efectivo, actual, concreto y real. El pago implícito no satisface ese requisito."

Existe una diferencia notable entre la situación de hechos que estudiamos en el caso de la Clínica Juliá—una mera asignación en los libros de la clínica sobre la cual podrían girar o no los médicos de la institución y los hechos de este caso:— entrega de pagarés de una corporación solvente que podían ser negociados tan pronto se entregaran.—Además no hay tal diferencia entre el estatuto federal y el nuestro. Como cuestión de realidad, lo único que hizo nuestro estatuto, al añadir el requisito de "realmente pagado", fue incorporar en nuestra Ley como una declaración legislativa, lo que hasta ese momento, había sido la interpretación de los Tribunales norteamericanos sobre la disposición federal. ▪

Como la exigencia de la interpretación judicial federal es idéntica a la declaración legislativa insular, resulta aplicable a nuestra propia ley la jurisprudencia federal sobre el pago en virtud de pagarés negociables. Los casos citados por la ilustrada Sala sentenciadora: *Musselman Hub-Brake Co.* v. *Commissioner of Internal Revenue*, 139 F.2d 65 (Hamilton) (1943), cita precisa a la pág. 68; *Celina Manufacturing Co.* v. *Commissioner of Internal Revenue*, 142 F.2d (Per Curiam) (1944), aplicando el caso de *Musselman; Anthony P. Miller Inc.* v. *Commissioner of Internal Revenue*, 164 F.2d 268, (Goodrich) (1947), cita precisa a la pág. 269; *Commissioner of Internal Revenue* v. *Mundet Cork Corp.*, 173 F.2d 757 (Per Curiam) (1949), aplicando los casos de *Miller* y *Musselman; Sachs* v. *Commissioner of Internal Revenue*, 208 F.2d 313 (Staley) (1953), cita precisa a la pág. 315, en el sentido, que la entrega de pagarés negociables, de una empresa solvente equivale al pago en efectivo o por cheque resultan todos correctamente aplicados. No debe hacerse diferencia entre los pagarés a presentación y los

pagarés a plazo fijo: *Mid-State Products Co.* v. *Commissioner of Internal Revenue*, 21 TC-696 (Turner) (1954), cita precisa a la pág. 719. Claro debe ser que todo esto queda sujeto a que el sistema del pago por obligaciones negociables no se haga con fines de evadir la contribución o de acomodar el pago a la única conveniencia del contribuyente. En este caso, la prueba demuestra que se trata de una operación limpia, cumplida a cabalidad de acuerdo con los términos originales de la transacción.

*Siendo esto así, debe confirmarse la sentencia.*